The BUBBLE ROOM, INC.,
Plaintiff–Appellee,

v.

The UNITED STATES, Defendant–
Appellant.

No. 97–5030.

United States Court of Appeals,
Federal Circuit.

Oct. 16, 1998.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Jan. 14, 1999.

James L. Malone, III, McDermott, Will & Emery, Chicago, IL, argued, for plaintiff-appellee. With him on the brief was Adam J. Narot. Of counsel on the brief was Peter Kilgore, General Counsel, National Restaurant Association, Washington, DC.

Bruce R. Ellisen, Attorney, Appellate Section, Tax Division, Department of Justice, Washington, DC, argued, for defendant-appellant. With him on the brief were Loretta C. Argrett, Assistant Attorney General, and Andrea R. Tebbets, Attorney.

Before PLAGER, SCHALL, and BRYSON, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Dissenting opinion filed by Circuit Judge PLAGER.

SCHALL, Circuit Judge.

This litigation arises out of a tax dispute between a restaurant owner, the Bubble Room, Inc. (the "Bubble Room"), and the Internal Revenue Service ("IRS"). The principal issue presented is whether the IRS has authority under the Internal Revenue Code ("I.R.C." or "Code") to assess the Bubble Room's share of Federal Insurance Contribution Act ("FICA") taxes on unreported tips of its restaurant employees on an aggregate basis, without first determining the underreporting by the individual employees and then crediting their Social Security wage earnings records. The Court of Federal Claims granted summary judgment in favor of the Bubble Room, holding that the assessment of its share of FICA taxes on unreported tips in the aggregate was invalid under the Code because the taxes did not correlate with FICA tax paid by or assessed against individual employees. See Bubble Room, Inc. v. United States, 36 Fed. Cl. 659, 679 (1996). For the reasons set forth below, we vacate the resulting judgment in favor of the Bubble Room and remand the case for further proceedings.

## BACKGROUND

### I.

Some background relating to the tax scheme at issue may help the reader to better understand this case. The Social Security system has been described as "a form of social insurance" whereby "persons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled, and their dependents." Flemming v. Nestor, 363 U.S. 603, 609, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). The purpose of the Social Security Act, stated in its broadest terms, is to provide for the general welfare. See Helvering v. Davis, 301 U.S. 619, 640, 57 S.Ct. 904, 81 L.Ed. 1307 (1937). To that end, the Act covers a wide range of programs, including retirement (old-age) insurance, survivor's insurance, disability insurance, hospital and medical insurance for the aged and disabled, supplemental security income, and a variety of other public assistance services. See 42 U.S.C. § 301 (1988)[1] (to "furnish financial assistance to aged needy individuals" and their survivors); 42 U.S.C. § 1351 (to "furnish financial assistance ... to needy individuals eighteen years of age and older who are permanently and

---

1. Unless otherwise indicated, all references are to the 1988 version of the United States Code.

totally disabled"); 42 U.S.C. § 1381 ("to provide supplemental security income to individuals who have attained age 65 or are blind or disabled"); 42 U.S.C. §§ 1395i to 1395i–2a (to provide hospital insurance benefits to aged and disabled individuals); 42 U.S.C. § 1395j ("to provide medical insurance benefits … for aged and disabled individuals"). These programs are largely financed out of taxes paid by employers and employees under the provisions of FICA.[2] *See* 42 U.S.C. § 911. FICA tax proceeds are paid into the United States Treasury, and each year an amount equal to the proceeds is appropriated to the Federal Old–Age and Survivors Insurance Trust Fund, the Federal Disability Insurance Trust Fund, the Federal Hospital Insurance Trust Fund, and the Federal Supplementary Medical Insurance Trust Fund, from which benefits and expenses of the Social Security System are paid. *See* 42 U.S.C. § 911; *see also Flemming,* 363 U.S. at 609, 80 S.Ct. 1367.

### A. Employee and Employer FICA Taxes

I.R.C. § 3101 establishes the employee's FICA tax obligation.[3] Under I.R.C. § 3101, every employee is required to pay a FICA tax, which is calculated as a percentage of his or her "wages" earned during the tax year. "Wages" are defined to include, with certain exceptions, "all remuneration for employment." I.R.C. § 3121(a). The employer is responsible for collecting the employee FICA tax from each of its employees "by deducting the amount of tax from the wages as and when paid." I.R.C. § 3102(a)-(b); *see also* 26 C.F.R. § 31.3102–1 (1989).[4]

The obligation to pay FICA tax is imposed on employers independently of their employees' obligation. Compare I.R.C. § 3101 (establishing employee FICA tax) with I.R.C. § 3111 (establishing employer FICA tax). I.R.C. § 3111 imposes a FICA tax on every employer "having individuals in his employ." The employer FICA tax is computed as a percentage of "the wages … paid by [the employer] with respect to employment."[5] *Id.* The employer tax attaches "at the time that the wages are paid by the employer." 26 C.F.R. § 31.3111–3.

### B. Treatment of Tipped Income

With some exceptions, tips received by employees are treated as wages for both the employee and employer's share of FICA taxes. *See* I.R.C. § 3121(q) ("[T]ips received by an employee in the course of his employment shall be considered remuneration for such employment (and deemed to have been paid by the employer for purposes of subsections (a) and (b) of section 3111)."). There are two exceptions to this general rule. First, I.R.C. § 3121(a)(1) provides that the term "wages" does not include any "remuneration" received by an individual employee in excess of "the contribution and benefit base," which was $48,000 in 1989. Second, under I.R.C. § 3121(a)(12)(B), the term "wages" does not include cash tips received by "an employee" in any calendar month in which such tips are less than $20. The parties refer to the two exceptions collectively as defining a "wages band." Thus, as far as both employer and employee FICA tax liability are concerned, tips received by an individual employee are treated as "wages" only if the employee received at least $20 of tips in a particular month (the low end of the "wages band") and the employee has not already received tips and other remuneration during the year in excess of the annual wage limitation (the high end of the "wages band").

Tipped employees must "report all … tips [received in the course of employment] in one or more written statements furnished to [their] employer on or before the tenth day of the month following the month in which the tips are received." I.R.C. § 6053(a); *see*

---

**2.** Social Security programs are also financed by taxes paid by self-employed individuals under the Self–Employment Contributions Act. *See* 26 U.S.C. §§ 1401–1403.

**3.** References to the Code (I.R.C.) are to the 1988 version of Title 26 of the United States Code.

**4.** References to regulations are to the 1989 version of 26 C.F.R.

**5.** Employers and their employees are taxed at the same percentage rate. *See* I.R.C. §§ 3101(a)-(b), 3111(a)-(b).

26 C.F.R. § 31.6053–1.[6] In that regard, unlike the situation where a tip is charged to a credit card, no record exists of the amount of a cash tip. Cash receipts at restaurants, such as those operated by the Bubble Room, indicate only the cost of the underlying transaction, not any additional gratuity left by a satisfied customer. Thus, only the satisfied customers and the tipped employees know the exact amount of cash tips received by the employees. The tipped employees are in effect bound by an honor system when it comes to reporting to their employers cash tips that they have received.

Special rules apply for the purpose of collecting and calculating FICA taxes payable by employees with respect to tips. As indicated above, pursuant to I.R.C. § 3102(a), an employer must collect from each of its employees the employee tax on tips received by the employee which constitute wages. *See* 26 C.F.R. § 31.3102–3(a). I.R.C. § 3102(c) instructs the employer on how to perform this obligation and reads as follows:

(c) Special rule for tips.—

(1) In the case of tips which constitute wages, subsection (a) shall be applicable *only to such tips as are included in a written statement furnished to the employer pursuant to section 6053(a)*, and only to the extent that collection can be made by the employer, at or after the time such statement is so furnished and before the close of the 10th day following the calendar month (or, if paragraph (3) applies, the 30th day following the year) in which the tips were deemed paid, by deducting the amount of the tax from such wages of the employee (excluding tips, but including funds turned over by the employee to the employer

pursuant to paragraph (2)) as are under control of the employer.[ [7]]

(Emphasis added). Thus, in the case of the employee FICA tax, the employer need only consider those tips that "are included in a written statement furnished by the employee to the employer pursuant to section 6053(a)." 26 U.S.C. § 3102(c); *see* 26 C.F.R. § 31.3102–3. Unlike the employee FICA tax, however, there is no parallel provision which limits the employer's FICA tax liability to tips that are included in the written statement furnished by the employee.

As noted, I.R.C § 3121(q) defines tips as remuneration for both the employer and the employee FICA tax. It also sets calculation dates for when those tips are to be considered paid. The time at which tips are considered paid is important for the statute of limitations. Under most circumstances, once a return is filed, the IRS has three years to assess the amount of any tax. *See* I.R.C. § 6501(a).[8] I.R.C. § 3121(q) reads:

For purposes of this chapter, tips received by an employee in the course of his employment shall be considered remuneration for such employment (and deemed to have been paid by the employer for purposes of subsections (a) and (b) of section 3111). Such remuneration shall be deemed to be paid at the time a written statement including such tips is furnished to the employer pursuant to section 6053(a) or (if no statement including such tips is so furnished) at the time received; *except that, in determining the employer's liability in connection with taxes imposed by section 3111 with respect to such tips in any case where no statement including such tips was so furnished (or to the extent that the statement so furnished was inaccurate or incomplete), such remuneration shall be*

---

**6.** The law also requires employees to include tips as reportable income on the employees' income tax return. *See* I.R.C. § 6001.

**7.** Paragraph 2 of I.R.C. § 3102(c) provides that if the employee tax imposed on tips exceeds the "wages of the employee (excluding tips) from which the employer is required to collect the tax," the employee may furnish to the employer "an amount of money equal to the amount of the excess." Under paragraph 3 of I.R.C. § 3102(c), employers can estimate the amount of tips that will be reported by an employee during a tax

year, and spread the deductions over the wage payments made during that year.

**8.** Under I.R.C. § 6201, "the Secretary is authorized and required to make inquiries, determinations, and assessments of all taxes." The assessment of a tax is the formal recording of a taxpayer's tax liability. Assessment not only establishes a taxpayer's liability for the amount of any tax due and unpaid, but also it establishes the IRS' entitlement to collect and retain the amount as a tax.

*deemed for purposes of subtitle F[⁹] to be paid on the date on which notice and demand for such taxes is made to the employer by the Secretary.*

(Emphasis added).

Tips were not always subject to FICA tax liability. In 1965, Congress amended the law to require employers to withhold FICA taxes based on tip income and to allow employees' Social Security wage earnings accounts to be credited for tip income earned. *See* Social Security Amendments of 1965, Pub.L. No. 89–97, Title III, § 313, 79 Stat. 286, 380–85 (1965). Tips, however, were not considered remuneration for employment for purposes of the employer's share of the FICA tax.

The Social Security Amendments of 1977 established the duty of an employer to pay FICA taxes on some of the tips received by its employees. *See* Social Security Amendments of 1977, Pub.L. No. 95–216, Title III, § 315(a), 91 Stat. 1509, 1536 (1977), *repealed by* Pub.L. No. 100–203, Title IX, § 9006(b)(2), 101 Stat. 1330–289 (1987). Employers were required to pay FICA tax on tips received by employees up to the amount of the federal minimum wage. *See* H.R.Rep. No. 95–702(I), at 11 (1977), *reprinted in* 1977 U.S.C.C.A.N. 4155, 4168. As a result, employees were subject to FICA taxes on all tips, but employers were exempt from FICA taxes for the amount of employee tip income in excess of the federal minimum wage. In 1987, Congress established an employer duty to pay FICA taxes on all tips that fall within the definition of "wages." *See* Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, Title IX, § 9006, 101 Stat. 1330–288, 289 (1987).

### C. Indirect Formulas to Estimate Tip Income

In previous cases, the IRS had used an indirect method of computation to determine the amount of tips received by an individual employee. The authority to do so was held to derive from I.R.C. § 446(b). *See Mendelson v. Commissioner*, 305 F.2d 519, 521 (7th Cir.1962); *Meneguzzo v. Commissioner*, 43 T.C. 824, 831, 1965 WL 1240 (1965) ("If a taxpayer fails to keep the required records, or the records do not clearly reflect income, respondent is authorized by section 446 to compute income in accordance with such method as in his opinion does clearly reflect income."). Under that provision, if the method of accounting used by the taxpayer "does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary[¹⁰ ], does clearly reflect income." I.R.C. § 446(b).

One indirect method that has been approved by the Secretary with respect to tip income is the McQuatters formula. The formula takes its name from a Tax Court case, *McQuatters v. Commissioner*, 32 T.C.M. (CCH) 1122, 1973 WL 2419 (1973). The McQuatters formula works as follows: (1) total sales of the employer are reduced by a percentage to account for sharing tips and for customers who leave little or no tip; (2) the resulting amount is divided by the total number of hours worked by all servers during the year to determine a sales-per-hour average; (3) that average is multiplied by the number of hours worked by each server to determine the server's yearly sales; and (4) the yearly sales of each server are multiplied by an average tip rate to determine the yearly tip income of each server. *See id.* at 1125. The formula uses the charged tip rate (i.e., the tip rate computed on bills charged by customers to credit cards) as a reference point for the average tip rate. *See id.*

In the *McQuatters* case, tipped employees contested the assessment of additional taxes due on unreported tips for the 1967 and 1968 tax years. After determining that the tip income reported by the tipped employees on their tax returns was unrealistically low, "(from $0.17 to $1.18 per hour)," the IRS used the above-described indirect formula to estimate the amount of tip income that the employees had actually received in 1967 and 1968. *Id.* at 1125. The *McQuatters* court held that the IRS was allowed to use the

---

**9.** Subtitle F is titled "Procedure and Administration" and includes I.R.C. §§ 6001–8023.

**10.** "The term 'Secretary' means the Secretary of the Treasury or his delegate." I.R.C. § 7701(a)(11)(B).

indirect method to assess a FICA tax against individual employees. In so holding, it stated:

> Petitioners complain that their tips did not average anything close to 12 percent of their sales and that seven percent is a more realistic figure; however, their evidence in support of such claims has little relevance or credibility since a sparse effort was made in 1970 and 1971 to determine actual tips and there were inconsistencies in these efforts. In the absence of adequate record keeping by the [tipped employees], the [IRS] was justified in reconstructing their tip income by an indirect method, and the method employed was logically and factually sufficient.

*Id.*

Similarly, in *Mendelson,* the IRS used the same formula to estimate the unreported tip income of an employee who had understated her tip income for the tax years 1957 and 1958, (reporting only $200 in tip income in 1957 and $0 in tip income 1958). *See* 305 F.2d at 521–22. The *Mendelson* Court held that

> the method used by [the Commissioner of Internal Revenue] in determining [the tipped employee's] income from tips was within his statutory power and was not arbitrary, excessive or without rational foundation, as urged by the taxpayer. His method has the support of a presumption of correctness, and the petitioner had the burden of proving it to be wrong.

*Id.* at 522. Continuing, the court stated:

> Obviously, where a taxpayer keeps no records disclosing his income, no method can be devised which will produce an exact result. The law does not require that much. It is sufficient if the method employed produces a result which is substantially correct. All taxpayers, including the one here involved, by failure to keep records of their income assume the hazard that they may be called upon to pay a tax

based on an income which cannot be determined to a certainty. Such a situation, however, arises from the fault of the taxpayer and not that of the Commissioner. *Id.* at 523.

## II.

To the extent relevant to our disposition of the case, the facts are undisputed. During 1989, the tax year in question, the Bubble Room operated two full-service, family restaurants in Maitland and Captiva, Florida. It employed 87 tipped employees at its Maitland restaurant and 72 tipped employees at its Captiva restaurant. In addition to receiving hourly wages from the Bubble Room, the tipped employees received tips from the customers they served. Under an informal "tip-out" system, waiters and waitresses, directly tipped by customers, shared their tips with other employees (busboys, bartenders, and dessert servers). Because cash tips were paid directly by customers to the waiters and waitresses and there was no record of the amount of the tip, the Bubble Room did not know whether a cash-paying customer paid a tip and, if so, the amount of the tip.

As noted, employees at the Bubble Room were required under I.R.C. § 6053(a) to report all tips constituting wages to their employer, using IRS Form 4070, by the tenth day of each month. *See* 26 C.F.R. § 31.6053–1(b)(2). The Bubble Room informed its employees of this obligation. In addition, it distributed an "Employee Policy Manual" to its employees, which outlined the employees' responsibilities for complying with IRS reporting rules. Finally, the Bubble Room implemented a computerized check-out process, in which tipped employees were required to report their tip income to the Bubble Room on a daily basis.

On February 26, 1990, the Bubble Room filed an IRS Form 8027 ("Employer's Annual Information Return of Tip Income and Allocated Tips") for the 1989 calendar year.[11]

---

11. Under 26 C.F.R. § 31.6053–3, "certain large food or beverage establishments," such as the Bubble Room, are required to file a separate information return, made on Form 8027, for each calendar year. 26 C.F.R. § 31.6053–3(a)(1),(3). The return must include (i) the "ag-gregate gross receipts ... of the establishment from the provision of food or beverages;" (ii) the "aggregate amount of charge receipts ... on which there were charged tips;" and (iii) the "aggregate amount of tips actually received by food or beverage employees of the establishment

Based on the information supplied by its employees, the Bubble Room reported from its two restaurants gross receipts in the amount of $7,336,685.81; charged receipts in the amount of $3,667,927.28; charged tips in the amount of $597,242.21; and total reported employee tip income in the amount of $647,159.50. The Bubble Room also filed IRS Form 941 ("Employer's Quarterly Federal Tax Return") for the four calendar quarters of 1989, and W–2 Forms ("Wage and Tax Statement") for 1989 for each of its tipped employees. On these forms, the Bubble Room reported wages actually paid and cash tip income reported to the Bubble Room by its employees. The reported figures reflected a tip rate of approximately 16.4% on charged receipts and a tip rate of 1.4% on cash receipts.

By letter dated December 31, 1990, the IRS notified the Bubble Room that it had been selected for a compliance check focusing on tip income reporting. The compliance check was performed by the IRS on January 7–8, 1991, and related to tax year 1989. By a "Notice and Demand" letter dated October 28, 1991, the IRS notified the Bubble Room that it had determined that the Bubble Room's "tipped personnel were not reporting all of the tips they [had] received." The letter also indicated that the IRS had computed the additional employer FICA taxes on the allegedly unreported tips to be $31,790.

The FICA tax assessment was based on an estimate of the aggregate tip income earned by all of the Bubble Room's tipped employees during 1989. To calculate the employer FICA tax liability on the aggregate estimated tip income, the IRS used the McQuatters formula. The IRS computed the charged tip rate by dividing the total charged tips for a random sample of 28 days in 1989 by the total charged sales for the sample 28 days.[12] Based on this sample, the IRS calculated the

charged tip rate to be 14.6% of the cost of a meal. The IRS assumed that the cash tip rate was the same as the charged tip rate.[13] After adjusting the total gross receipts to account for non-paying customers, the IRS applied the 14.6% tip rate for charged meals to the adjusted total gross receipts to calculate a total cash and charged tip amount for 1989. By subtracting the total reported employee tip income from that figure, the IRS calculated that the Bubble Room's tipped employees received $423,298 in additional unreported tips in 1989. Multiplying $423,298 by 7.51% (the employer FICA tax rate for 1989), the IRS determined that $31,790 of employer FICA taxes were due from the Bubble Room.

As noted, the IRS did not assess the Bubble Room's FICA tax liability based on the sum of individual assessments and collections of additional FICA taxes from the Bubble Room's tipped employees. Neither did the IRS perform, as part of its compliance check, any audits of individual tipped employees who worked at the Bubble Room during 1989. In addition, there was no attempt to levy assessments against any individual employees. As a result, the additional FICA tax assessment made against the Bubble Room by the IRS was based solely on an aggregate estimate of the amount of employees' unreported tips.

In April 1993, after some negotiating, the Bubble Room paid the additional FICA taxes assessed by the IRS, together with interest, for a total payment of $37,269.38. On June 7, 1994, the Bubble Room submitted to the IRS a Claim for Refund, IRS Form 843. On August 12, 1994, the IRS notified the Bubble Room that its claim for a refund with respect to the additional FICA tax liability was denied.

during the calendar year and reported to the employer under section 6053(a)." 26 C.F.R. § 31.6053–3(a).

12. The IRS presently has no records indicating which days in calendar year 1989 were used for the compliance check.

13. The Revenue Agent who computed the assessment assumed that all customers who paid for a

meal charged a tip or paid a cash tip. In other words, the agent did not take into account whether any customers had paid for meals but had not left tips. In addition, the agent did not adjust the charged tip rate to reflect the 3 percent deduction that the Bubble Room made before paying over the charged tips to its employees, corresponding to the 3 percent fee retained by credit card companies.

On September 21, 1994, the Bubble Room filed a complaint in the Court of Federal Claims pursuant to 28 U.S.C. § 1491(a), seeking a refund for the overpayment of FICA taxes on tip income allegedly earned by the Bubble Room's employees in 1989, but not reported to the Bubble Room or the IRS. The Bubble Room sought recovery of FICA taxes in the amount of $31,790 and interest in the amount of $5,479.38, as well as attorneys' fees and costs. In due course, the Bubble Room moved for summary judgment, arguing that the IRS had improperly assessed and collected the employer-only FICA tax. Specifically, it asserted that the IRS lacked the statutory authority to impose an employer-only FICA tax based on the aggregate unreported tip income of its employees without first determining the unreported tip income of each individual employee and then crediting the Social Security earnings record of each employee. The Bubble Room contended that, if its motion for summary judgment was denied, it would be necessary to litigate whether the IRS's estimate of the understated tip income was accurate.

The government, in turn, cross-moved for summary judgment, arguing, *inter alia,* that the IRS was authorized by I.R.C. § 3121(q) to assess an employer-only FICA tax and that it would not be necessary to litigate the accuracy of the IRS's estimate because the Bubble Room could not carry its burden of proving the elements necessary to establish the amount of tax which it claimed that it was entitled to recover. According to the government, by adding the notice and demand clause in § 3121(q), Congress mandated the assessment of the employer-only FICA tax when employees do not accurately report tips to their employer. Specifically, the government contended that by keeping the period of limitations for the assessment of the employer FICA tax open until notice and demand is made under I.R.C. § 3121(q), Congress intended to permit assessment of the employer FICA tax even though the employee FICA tax could no longer be assessed. It also asserted that the legislative history of I.R.C. § 3121(q) supported its interpretation and that the tax assessed against the Bubble Room was reasonable.

The Court of Federal Claims granted the Bubble Room's motion for summary judgment and denied the government's cross-motion. *See Bubble Room,* 36 Fed. Cl. at 661. In so doing, the court rejected the government's argument that § 3121(q) had been amended by Congress to expand employer liability and to allow the assessment of employer-only FICA tax when employees do not accurately report their tips. *See id.* at 669. First, the court found that the language in I.R.C. § 3121(q) "is silent regarding whether the IRS can or should impose an employer only FICA tax based on an aggregate estimate of unreported tips allegedly earned by the [Bubble Room's] employees, in the absence of imposing similar tax liability on the individual employees for tips earned." *Id.* The court determined that the last clause of I.R.C. § 3121(q) regarding notice and demand applied only to timing issues, and that the government's argument for anything beyond that was unpersuasive. *See id.* at 674–75. Turning to the legislative history of I.R.C. § 3121(q) and the overall context of the FICA tax provisions, the court concluded that Congress did not intend "to allow the IRS to assess an asymmetrical liability for FICA taxes on employers only, without assessing the employee or crediting the employee for Social Security benefits purposes." *Id.* at 674. Additionally, the court examined the nature of the Social Security system, noting that "[t]he purpose of the Social Security laws is to provide security for the employees and not to provide 'windfalls' for [the][g]overnment." *Id.* (quoting *American Home Foods, Inc. v. United States,* 136 Ct. Cl. 569, 575, 145 F.Supp. 201 (1956)).

Finally, the Court of Federal Claims proffered an alternative basis for its decision. The court found that the use of the McQuatters formula against the Bubble Room was unjustified and inappropriate because the formula had always had an underlying punitive purpose and the Bubble Room did not deserve to be punished. In that regard, the court stated:

> In the ... case now before this court, the government attempts to argue that the McQuatters formula, previously used only to calculate individual employee income tax liability, also can be used to assess FICA

taxes against the employer based upon the aggregate of estimated tip income of its employees. The punitive reasoning employed by the McQuatters court, which justified the IRS assessment because of the failure of the employees to keep adequate records, however, does not justify applying the McQuatters formula to employers such as the Bubble Room to reconstruct or estimate employee records on an aggregate basis. Employers do not have an opportunity to verify the amount of cash tips earned by their individual employees. Their knowledge of employees' tip income is limited to copies of credit card charge slips and to reports of tips received from their employees, who have direct interaction with customers. Tipping was a voluntary activity between customers and Bubble Room employees, therefore, the plaintiff had no way of determining the exact amount of tips received by individual employees if the tip was not charged and if the employees were not forthcoming.

*Id.* at 676.

## DISCUSSION

### I.

### A.   Standard of Review

We have exclusive jurisdiction over appeals from final judgments of the Court of Federal Claims. *See* 28 U.S.C. § 1295(a)(3) (1994). We review a grant of summary judgment *de novo,* applying the same standard as the Court of Federal Claims. *See Costain Coal, Inc. v. United States,* 126 F.3d 1437, 1440 (Fed.Cir.1997). Pursuant to Rule 56 of the Court of Federal Claims, summary judgment is properly granted only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c). A genuine issue of material fact exists if there is a disputed fact, the disputed fact is material to the outcome of the case, and the dispute is genuine, that is, a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in the opposing party's favor. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505. The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir. 1987). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the court must evaluate each motion on its own merits, taking care in each instance to view the evidence in favor of the nonmoving party. *See id.* As indicated above, to the extent relevant to the disposition of the main issue before us, we agree with the parties that there are no genuine issues of material fact.

In a tax refund case, the ruling of the Commissioner of Internal Revenue is presumed correct. *See Lima Surgical Assocs., Inc. v. United States,* 944 F.2d 885, 888 (Fed.Cir.1991). To rebut this presumption of correctness, the taxpayer must come forward with enough evidence to support a finding contrary to the Commissioner's determination. *See id.* In addition, the taxpayer has the burden of establishing entitlement to the specific refund amount claimed. *See United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

### B.   The Issues and Contentions of the Parties

The primary issue in this case concerns the manner in which the IRS may make an employer FICA tax assessment with respect to tips allegedly received but not reported by tipped employees. Specifically, we must decide whether the IRS has statutory authority to assess FICA taxes against an employer based on an aggregate estimate of its employees' unreported tip income, without determining (by estimate or otherwise) the tip income of each individual employee. If the IRS has such authority, a second issue is whether the IRS accurately calculated the

Bubble Room's FICA tax liability. With regard to the second question, we share the view of the Bubble Room and the Court of Federal Claims that there are genuine issues of material fact in dispute which preclude summary judgment.

On appeal, the government argues that the Court of Federal Claims erred in concluding that the IRS lacked the authority to assess FICA taxes against the Bubble Room based on an aggregate estimate of its employees' unreported tip income. The government argues that, under §§ 3121(q) and 3111, the obligation to pay FICA tax is imposed on employers independently of their employees' obligation and that the employer's FICA tax is equal to a percentage of the total remuneration, including tip income, received by its employees. The government maintains that I.R.C. § 6201, which authorizes the Secretary to "make inquiries, determinations, and assessments of all taxes," authorizes the IRS to determine and assess the amount of employer FICA tax imposed by § 3111 with respect to the total tip income received by a business's employees. Moreover, the government continues, I.R.C. § 3121(q) authorizes the IRS to issue a notice and demand that an employer pay its FICA tax, even when employees fail to report their tips or their statements are inaccurate.

In addition, the government argues that the Court of Federal Claims erred in holding that Congress did not intend to allow the IRS to assess an asymmetrical liability for FICA taxes on employers only. Rather, the government asserts, Congress specifically contemplated an asymmetrical liability. First, pursuant to I.R.C. § 3102(c)(1), an employer's duty to collect and remit its employees' share of FICA taxes applies only with respect to such tips as are included in the employees' written statements. In contrast, the employer's duty to remit its share of FICA taxes is not so limited by the statute. Second, the employer tax imposed by I.R.C. § 3111 is a separate and distinct obligation from the employee tax in I.R.C. § 3101. In other words, the government asserts, nothing conditions the imposition of one tax on the other. Third, the limitations

periods for the two types of taxes are different. *See* I.R.C. § 3121(q).

The government also claims that the Court of Federal Claims erred in linking the imposition of the employer FICA tax to the crediting of employees' individual Social Security earnings accounts. According to the government, if an employee does not receive Social Security credit for tips earned, it is because the employee has failed to report his or her earnings, as required by law. The government further argues that "the apparent failure of taxpayer's employees to fulfill [their] responsibility does not override the statutory mandate that taxpayer, as their employer, pay its share of FICA taxes on their behalf."

The Bubble Room responds that the method used by the IRS to estimate its FICA tax liability is fundamentally inconsistent with (i) the "wages band" defined by § 3121(a)(1) ("wages" do not include "remuneration" that exceeds the annual wage limitation) and § 3121(a)(12)(B) ("wages" do not include tips totaling less than $20 in a month); (ii) the wording of § 3121(q); (iii) the legislative history of § 3121(q); (iv) the general purpose of the Social Security system; and (v) the tip reporting statutory scheme which places the burden on the IRS, not the employer, to audit an employee if the employee fails to report tips.

The Bubble Room argues that, pursuant to the "wages band" provisions in I.R.C. §§ 3121(a)(1) and 3121(a)(12)(B), the IRS was obligated to apply the following three-step analysis:

(1) determine the amount of tips received by the employee each month and determine the amount of tips and other remuneration received by the employee during the year;

(2) determine whether any tips are excluded from the definition of "wages" because the employee received less than $20 of tips in a particular month; and

(3) determine whether any tips are excluded from the definition of "wages" because the employee's total remuneration exceeded the annual wage limitation.

In addition, the Bubble Room urges us to require the IRS to follow a fourth step. It asserts that, in any given case, the IRS must review each employee's tax records and determine that they are inadequate before using an indirect formula, such as the McQuatters formula, to estimate the amount of tips received by the employee. Because the "IRS did not make any such [four-step] per-employee determinations in this case," the Bubble Room concludes that "the Court of Federal Claims properly granted taxpayer's motion for summary judgment."

The Bubble Room contends that, pursuant to I.R.C. § 3121(q), the IRS is required to assess FICA tax on unreported cash tips on a per-employee basis before it can make an employer FICA tax assessment based on those tips. In addition, the Bubble Room asserts that an assessment of an employer FICA tax on unreported tips without crediting the Social Security earnings records of the tipped employees is contrary to the legislative history of I.R.C. § 3121(q) and the purpose of the Social Security Act.

Finally, the Bubble Room argues, where an employee fails to report tips, the IRS, not the employer, has the resources, the statutory power, and the obligation to audit the employee and determine the amount of tips received. The Bubble Room notes that the IRS has broad investigation power under I.R.C. § 6201 and that a restaurant employer cannot compel an employee to provide the employer with evidence to refute the accuracy of an IRS estimate. Moreover, the Bubble Room continues, an employer has no right to obtain tax returns, tip logs, or other documents from the employee.

### C. I.R.C. § 3121(q)

█ The question before us, whether the IRS has the authority to assess FICA taxes against an employer in the manner that it did here, is one of statutory interpretation, a matter of law which we review *de novo.*[14] *See Costain Coal,* 126 F.3d at 1440. The parties devote large portions of their briefs

to the 1987 amendment and § 3121(q), from which they seek to derive the answer to whether the IRS was given authority by Congress to assess an employer-only FICA tax against the Bubble Room based on an aggregate estimate of tip income earned by employees. As previously noted, I.R.C. § 3121(q) reads as follows:

> For purposes of this chapter, *tips received by an employee* in the course of his employment shall be considered remuneration for such employment (and deemed to have been paid by the employer for purposes of subsections (a) and (b) of section 3111). Such remuneration shall be deemed to be paid at the time a written statement including such tips is furnished to the employer pursuant to section 6053(a) or (if no statement including such tips is so furnished) at the time received; *except that,* in determining the employer's liability in connection with taxes imposed by section 3111 with respect to such tips in any case where no statement including such tips was so furnished (or to the extent that the statement so furnished was inaccurate or incomplete), such remuneration shall be deemed for purposes of subtitle F to be paid on the date on which notice and demand for such taxes is made to the employer by the Secretary.

(Emphasis added).

The Bubble Room argues that the highlighted phrase, "tips received by an employee," is grounded in the singular and that, therefore, I.R.C. § 3121(q) prohibits the IRS from making an assessment against the employer for FICA taxes on unreported tips without also making an assessment against the employee for FICA taxes on those tips.

The IRS responds with the general rule of construction found in 1 U.S.C. § 1, which provides that "[i]n determining the meaning of an Act of Congress, unless the context indicates otherwise—words importing their singular include and apply to several persons, parts, or things." Moreover, the IRS asserts

---

**14.** It is also a question of first impression for this court. In *Morrison Restaurants v. United States,* 118 F.3d 1526 (11th Cir.1997), the United States Court of Appeals for the Eleventh Circuit considered the same issue and held that "the IRS's

statutory interpretation is consistent with the structure and language of the Internal Revenue Code, the explicit purpose of the Social Security Act, and the policy of promoting accurate tip reporting." *Id.* at 1530.

that, in adding the clause beginning "except that . . ." to I.R.C. § 3121(q), "Congress specifically contemplated the assessment of an employer-only FICA tax when employees do not accurately report their tips."

Finding the government's arguments persuasive, we reject the Bubble Room's interpretation of I.R.C. § 3121(q). At the same time, we agree with the Court of Federal Claims that the phrase "tips received by an employee" in the first sentence of I.R.C. § 3121(q) is not dispositive. To the contrary, the first sentence in § 3121(q) merely provides that tips are considered wages received by the employee and paid by the employer. It neither expressly grants nor denies the IRS power to assess employer-only FICA taxes without first assessing the FICA tax liability of each tipped employee.

### D. Purpose of the Social Security System

As noted, the Court of Federal Claims found that the text of I.R.C. § 3121(q) is silent as to whether the IRS may assess an employer-only FICA tax based on an aggregate estimate of unreported tips. *Bubble Room*, 36 Fed. Cl. at 679. Based on the 1987 amendments to I.R.C. § 3121(q) and the purpose of the Social Security system, however, the Court of Federal Claims held that Congress did not intend to allow the IRS to assess an employer FICA tax without crediting the individual employees for Social Security benefit purposes. *Id.* at 675. Because the IRS did not credit the Social Security earnings records of each of the Bubble Room's tipped employees, the Court of Federal Claims concluded that the aggregate tax assessment against the Bubble Room was illegal.

The bill which contained the 1987 version of § 3121(q) was accompanied by a Report of the Senate Committee on Finance. The Senate Report read as follows:

### Reasons for Change

Under present law, an employee is required to pay FICA taxes on the total amount of his or her cash tips up to the Social Security wage base. The employer, however, is required to pay FICA taxes only on a portion of the tips [ (up to the amount of the federal minimum wage) ]. Because Social Security benefits are determined with respect to the entire amount of tips, current law in effect provides a benefit to employers whose employees receive part of their compensation in the form of tips, as compared to other employees who receive all their compensation as salaries. It is believed that to apportion the costs of Social Security benefits more accurately, employers should be subject to tax on all tips *which are credited for benefit purposes.*

### Explanation of Provision

Under this provision, all cash tips which are subject to the employee FICA tax are included within the definition of wages for purposes of the employer's share of FICA taxes. Thus, employers must pay FICA taxes on the total amount of cash tips and other remuneration, up to the Social Security wage base.

Staff of Senate Comm. on Finance, 100th Cong., 1st Sess., Print No. 100–63, *Explanation of Provisions Approved by the Committee on December 3, 1987, for Inclusion in Leadership Deficit Reduction Amendment,* 202–03 (Comm. Print 1987) (emphasis added).

The Bubble Room reads the highlighted statement as showing that Congress intended that the employer FICA tax would be imposed only on tips that are "credited for benefit purposes." We do not agree that this legislative history conclusively implies a distinction between tips that are "credited" for benefit purposes and tips that are "not credited" because employees fail to report them. The statement that "employers should be subject to tax on all tips which are credited for benefit purposes" must be read in context and with the understanding that the Senate staff was likely contemplating an ideal world in which employees report all of their tips.

At the same time, we do not agree with the Court of Federal Claims that the purpose of the Social Security Act is inconsistent with the assessment of an employer-only FICA tax. The assistance provided by the Social Security Act is not for the limited purpose of

providing benefits equal to the amount of FICA taxes paid by an individual employee and his or her employer. Rather, as noted above, the Social Security System is "a form of social insurance" whereby "persons gainfully employed, and those who employ them, are taxed to permit the payments of benefits to the retired and disabled, and their dependents." *Flemming,* 363 U.S. at 609, 80 S.Ct. 1367. Thus, "[e]ach worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation." *Id.* at 609–10, 80 S.Ct. 1367.

If an employee accurately reports his or her tips under I.R.C. § 6053, the employee's wage earnings account will be credited. In this case, the only reason why the Bubble Room employees' wage earnings accounts were not credited is because they failed to report all their earnings. We are convinced that, when an employee fails to report tips received, neither the employee nor the employer can then complain that the employer's share of FICA taxes is not credited to the employee's wage history account. *See Morrison Restaurants, Inc. v. United States,* 118 F.3d 1526, 1530 (11th Cir.1997). In other words, the employee, by failing to report the tips as wages, has waived the right to be credited for the employer's payment of FICA tax on an aggregate estimate of the unreported tips. *See id.*

### E. Statutory Authority for Indirect Formulas

■ We read §§ 3101 and 3111 as imposing a separate and distinct tax liability on employers. As noted, the employer's and employee's FICA tax liability are provided in separate sections of the Code. *Compare* I.R.C. § 3101 (establishing employee FICA tax) with I.R.C. § 3111 (establishing employer FICA tax). Because nothing conditions the imposition of one tax on the other and because the IRS is not required to assess a tax against every delinquent taxpayer, we

conclude that the IRS is not obligated to assess FICA tax against each employee before it can assess FICA tax against the employer.[15]

■ This does not, however, end the inquiry. We still must determine whether the IRS had the authority to compute the amount of FICA tax owed by the Bubble Room based on an aggregate estimate of the tip income received by its employees. As noted, the second sentence of § 3121(q) addresses the date on which tips shall be deemed to have been paid by the employer. In so doing, it refers to "determining the employer's liability in connection with taxes imposed by section 3111 with respect to tips in any case where no statement including such tips was so furnished (or to the extent that the statement so furnished was inaccurate or incomplete)." I.R.C. § 3121(q). As such, I.R.C. § 3121(q) expressly contemplates that the employer may be liable for its share of FICA taxes even if the records supplied by the employee are missing, inaccurate, or incomplete. Although not conclusive, § 3121(q) would thus seem to imply that an indirect method may be used to calculate the amount of employer FICA tax in the absence of any better evidence.

However, I.R.C. § 3121(q) does not fully address the question at issue here – whether the particular indirect formula used by the IRS to estimate the Bubble Room's FICA tax liability was illegal. I.R.C. § 6201 speaks to this question. Under I.R.C. § 6201, the IRS is "authorized and required to make the inquiries, determinations, and assessments" necessary for all taxes imposed by the Code, "which have not been duly paid ... in the manner provided by law." I.R.C. § 6201 implicitly authorizes the IRS to use an indirect formula in order to carry out the general power granted in I.R.C. § 6201. For example, the IRS would have to use an indirect formula to estimate the amount of FICA tax owed by an employer when there is no other way to "determine and assess" the wages deemed to have been paid by the employer.

**15.** As noted, "assessment" is a term of art. The assessment of a tax is simply the formal record-

ing of a taxpayer's tax liability.

I.R.C. § 446(b) authorizes the IRS to use an indirect method to calculate taxable income. *See Mendelson*, 305 F.2d at 521. Although I.R.C. § 446 applies to income tax as opposed to FICA tax, it is nonetheless informative in this case. In particular, it illustrates the use of an indirect method for calculating taxes. Moreover, the employer FICA tax imposed by I.R.C. § 3111 is expressed in terms of the employees' aggregate tip income. On its face, I.R.C. § 446 imposes only two limitations on the authority to use an indirect method to calculate taxable income. First, the IRS may use an indirect method only when the method of accounting used by the taxpayer "does not clearly reflect income." *Id.* Second, the indirect method used to estimate the taxpayer's tax liability must, "in the opinion of the Secretary, . . . clearly reflect income." *Id.*

In this case, the form 8027 filed with the Bubble Room's 1989 federal income tax return reported a cash tip rate of only 1.4%. The reported charge tip rate was 16.4%. The reported cash tip rate thus was less than one-tenth of the charge tip rate. We agree with the Court of Federal Claims that the discrepancy between the cash tip rate and the charge tip rate "suggests substantial underreporting for 1989." *Bubble Room*, 36 Fed. Cl. at 678. In these circumstances, it was reasonable for the IRS to determine that the method of accounting used by the Bubble Room did not clearly reflect income, and the IRS was justified in reconstructing the tip income deemed to have been paid by the Bubble Room.

We also conclude that the aggregate method used by the IRS to estimate the Bubble Room's tax liability was fair and reasonable, given the information available. The Bubble Room does not argue that the IRS is without authority to assess FICA tax against it. Rather, the Bubble Room takes issue with the particular formula used by the IRS. It contends that instead of determining an aggregate estimate of tip income and multiplying this figure by the percentage provided in I.R.C. § 3111, the IRS should have separately estimated the tip income of each Bubble Room employee, totaled the individual tip income amounts, and then multiplied the to-

tal tip income estimate by the percentage provided in I.R.C. § 3111. However, assuming that the aggregate formula is accurate and properly factors in the "wages band" in I.R.C. § 3121(a), the resultant FICA tax liability would be the same under either formula. In other words, as a matter of simple mathematics, it should not matter to the Bubble Room whether the IRS allocates the tip income amongst its employees.

The Court of Federal Claims held that the authority to use indirect formulas was limited to situations where the taxpayer failed to keep adequate records. *See Bubble Room*, 36 Fed. Cl. at 676. The court added an additional punitive element as a prerequisite to the use of the *McQuatters* formula. *See id.* In so doing, the Court of Federal Claims effectively restricted the meaning of I.R.C. § 6201. There is no basis in the statute for imposing such a limitation on the authority granted by Congress to the IRS.

Moreover, we do not believe that a taxpayer's liability is coextensive with his record keeping duty. The apparent failure of the taxpayer's employees to fulfill their record-keeping responsibility does not override the statutory mandate that the taxpayer, as their employer, pay its share of FICA taxes. For these reasons, we reject the position that the McQuatters formula is punitive in nature and thus limited to situations where taxpayers fail to keep adequate records. We believe that the better view is that the IRS may base assessments on indirect formulas in circumstances where it is clear that the taxpayer has understated the amount of wages received and it is impossible or impractical to determine the exact amount of wages actually received. That is precisely what occurred in both *McQuatters* and *Mendelson* with respect to the tip income earned by individual employees. In any event, the Code mandates that all taxpayers – employers and employees alike – keep adequate records of their tax-related transactions for the taxable year. *See* I.R.C. § 6001; *see also* 26 C.F.R. § 1.6001–1.

The Bubble Room argues that Congress placed the burden of determining an employee's tip income on the IRS, rather than the employer, because the IRS has the ability to

audit the employee and to make an assessment for tax and penalties against the employee. The Bubble Room contends that an employer-only FICA tax, based on an aggregate estimate of the tip income received by employees, is contrary to the statutory scheme, which places no burden on the employer to determine the amount·of tips actually received by each employee. Agreeing with the Bubble Room, the Court of Federal Claims determined that an employer should not be required to police the reporting of tips by its employees and that, therefore, the employer's FICA tax obligation should be based on the employees' reports, or the sum of individual estimates of each employee's tip income. *See Bubble Room*, 36 Fed. Cl. at 678.

While we agree with the Court of Federal Claims that "[e]mployers do not have an opportunity to verify the amount of cash tips earned by their individual employees," *Bubble Room*, 36 Fed. Cl. at 676, nothing in the Code limits an employer's FICA tax liability to tips that are included in the written statements provided by its employees.[16] To the contrary, I.R.C. § 3121(q) provides that tips that are not included in a written statement are nonetheless "deemed to have been paid by the employer." In addition, basing the employer's share of FICA taxes exclusively on reported tips might provide an incentive to an employer to "discourage accurate reporting or to ignore blatantly inaccurate reporting by the employees so that the employer could pay less FICA tax." *Morrison*, 118 F.3d at 1530. Moreover, as a practical matter, the IRS lacked the resources necessary to audit each of the Bubble Room's tipped employees to determine the unreported tip income of each tipped employee. Thus, requiring the IRS to make an assessment against each employee for employee FICA taxes on unreported tips before the IRS could make an assessment against the employer for employer FICA taxes on such tips might also provide an incentive to an employer to discourage accurate reporting or to ignore clearly inaccurate reporting by its employees.

### F. The Wages Band

■ Having found that the IRS was authorized to determine the employer FICA tax liability based on an aggregate estimate of the tip income received by its employees, we turn to the Bubble Room's argument that such an assessment is inconsistent with the "wages band" defined by § 3121(a)(1) ("wages" do not include "remuneration" that exceeds the annual wage limitation) and § 3121(a)(12)(B) ("wages" do not include tips totaling less than $20 in a month). According to the Bubble Room, any assessment of FICA taxes against an employee, and derivatively against the employer, that falls outside of this "wages band," is unlawful.

We agree that, by failing to take the "wages band" into account, the formula employed by the IRS to estimate tip income was inaccurate. However, we do not agree that these purported flaws make the assessment unlawful. Obviously, without accurate records, no estimate will produce an exact result. The Bubble Room's "wages band" argument merely suggests that the amount of FICA tax assessed against it may have been incorrect by some margin and that it may be entitled to a refund of some portion of the FICA tax assessed against it. In other words, this argument goes to the second issue in this case – whether the IRS accurately calculated the Bubble Room's FICA tax liability. It does not demonstrate that the IRS lacked the authority to assess an employer-only FICA tax based on an aggregate estimate of tip income.

■ The Court of Federal Claims identified at least four other potential flaws in the indirect formula used by the IRS to estimate the Bubble Room's FICA tax liability. Specifically, the court noted that the "IRS agent excluded charged meals on which employees did not receive tips because the tip, if any, was determined to be unknown"; the "IRS agent did not attempt to determine a 'no tip' rate"; and the "IRS agent did not take into account the three percent (3%) charge as-

---

16. In contrast, the Code expressly states that, in the case of employee FICA tax, the employer need only collect those tips that "are included in

a written statement furnished by the employee to the employer pursuant to section 6053(a)." 26 U.S.C. § 3102(c).

sessed by credit card companies for all charges, including tips, which the plaintiff deducted from the tips paid to servers." *Bubble Room*, 36 Fed. Cl. at 677. Finally, the court emphasized that "there is no evidence in the record indicating that tips on credit cards are proportional to cash tips." *Id.*

We view these alleged flaws in the same way as the purported failure of the IRS to properly account for the "wages band." They indicate that the indirect formula used by the IRS may have been inaccurate and thus raise genuine issues of material fact which preclude summary judgment for the government with respect to the second issue in this case. We emphasize, however, that whether there are flaws in the indirect formula used to estimate the FICA tax is a separate matter from whether the IRS has the authority to assess an employer-only FICA tax based on an aggregate estimate of unreported tip income. On remand, the Court of Federal Claims must determine whether, based on these purported flaws, the Bubble Room has come forward with enough evidence to overcome the presumption of correctness of the findings of the Commissioner of Internal Revenue, has shown that it is entitled to a partial refund of the FICA tax assessed against it, and has established the specific amount of that refund. *See Lima*, 944 F.2d at 888; *Janis*, 428 U.S. at 440, 96 S.Ct. 3021.

## CONCLUSION

For the foregoing reasons, we conclude that the Court of Federal Claims erred in holding that the IRS is prevented from assessing FICA tax against an employer based on an aggregate estimate of unreported tip income without determining the individual employees' tip income and crediting their Social Security earnings records. We therefore vacate the grant of summary judgment in favor of the Bubble Room and remand the case for further proceedings consistent with this opinion.

## COSTS

Each party shall bear its own costs.

*VACATED* and *REMANDED.*

PLAGER, Circuit Judge, dissenting.

I agree with the trial court that the Government had no business making this tax assessment; and, thus, I respectfully dissent from the panel's reversal of the trial court.[1]

My colleagues and I do not disagree about "the law." We all agree that there is not a statute or a controlling regulation that specifically authorizes the Internal Revenue Service to make the kind of aggregate assessment it has made here. The panel majority sets out to find a way for the Government to do what it wants to do, and, finding nothing else, stretches a general "taxpayers, be good citizens or else" section of the Internal Revenue Code to cover. All the rest of the majority opinion is a well-written, if lengthy, exegesis generally on the Code accompanied by a valiant effort to explain away the obvious inconsistencies between the statutes and the Government's conduct.

I confess I come at the problem from the other end. I assume that the IRS is a government agency whose powers and duties are defined by law, and, when challenged, must be able to show that its conduct is expressly authorized by law, or, if not expressly authorized, is at least clearly necessary to carrying out some express duty. *See, e.g., Bob Jones Univ. v. United States*, 461 U.S. 574, 596–99, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983); *United States v. Euge*, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980). Certainly, it is clear that the Congress and the President have expressed that the policy of the Treasury should be to approach its tax gathering responsibilities in a user-friendly way, *see* Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105–206, Title I, Subtitle A, § 1002 (July 22, 1998). The fact that this case arose before Congress made clear its dissatisfaction with the IRS's sometimes heavy-handed and arbitrary ways does not excuse us from testing the behavior of the agency in this case

---

1. Assuming that, as the majority holds, the aggregate assessment is lawful, I join the majority in remanding the case to determine whether the IRS's calculation of the tax due was correct.

against its statutory authority and ascertaining whether that behavior is consistent with basic rights of the taxpaying public.

The duty of an employer to pay FICA taxes on tips received by employees was established in the Social Security Amendments of 1977. *See* Social Security Amendments of 1977, Pub.L. No. 95–216, Title III, § 315(a), 91 Stat. 1509, 1536–37 (1977), *repealed by* Pub.L. No. 100–203, Title IX, § 9006(b)(2), 101 Stat. 1330–289 (1987). However, because the employer was made liable for FICA taxes only on a portion of the employee's tips, calculated on the basis of the federal minimum wage, while the employee's share of the tax was not so limited, Congress in 1987 imposed on employers the duty to match the amounts paid by and credited to employees. *See* Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 9006, 101 Stat. 1330–288–289 (1987) ("OBRA 1987"); S. Print. No. 63, at 203 (1987); 133 Cong. Rec. S34,826 (1987).

Thus, under the law in effect at the time of the assessment against Bubble Room, the Social Security system provided that all wages paid to employees are subject to FICA taxes imposed on the employer and the employee. The amount of tax is determined by multiplying the wages earned by the applicable tax rate. *See* I.R.C. § 3101. The rate is the same for the employer and the employee. *Compare* I.R.C. § 3011 *with* § 3111. For purposes of the Social Security Act, an employee's income derived from tips is treated as if it were wages paid by the employer. *See* I.R.C. § 3121(q).

The system is designed to integrate the Social Security System's premise of providing wage history credits to employees for wages earned and reported by the individual employees, on which history the employee's future benefits will be based, with the Internal Revenue Code's purpose of raising the funds to pay for these future benefits. This integration is accomplished by imposing the cost of benefits upon the wages currently paid employees and upon the employers who have the benefit of the employees' current labor.

All agree that the central issue in the case is one purely of statutory construction. All agree that a straightforward reading of the relevant sections of the Code does not reveal any express grant of the authority the IRS seeks. However, it does reveal inconsistencies between the specific provisions of the Code and the impact of an assessment based on an aggregate estimate.

Specifically, there is the fact that "wages" subject to FICA tax does not include cash tips received by an employee in any calendar month unless the amount of such cash tips is $20 or more, § 3121(a)(12)(B), nor does it include that part of an employee's received remuneration, including tips, which exceeds the annual contribution and benefit base determined under § 230 of the Social Security Act, § 3121(a)(1). Any assessment of FICA taxes against an employee, and derivatively against the employer, that is outside this "wages band" would be unlawful. Therefore, in the absence of information about the tip income of individual employees, the IRS cannot know whether the wages being assessed are within the wages band.

Since the IRS based its estimate of Bubble Room's unpaid taxes on an aggregate of all tips received by its employees, there is no way for the IRS to represent, much less establish, that the assessment was based on received "wages" lawfully subject to the tax. Though it may be that the excess taxes assessed in this manner against the employer amount to a relatively small amount, a Government demand for taxes that are not owed is unlawful on its face and remains unlawful regardless of the amount at issue. *Cf. Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 117 S.Ct. 1590, 1601 n. 15, 137 L.Ed.2d 852 (1997) (unconstitutional tax must be struck down even though it may be only *de minimus* ). At the least, the existence of the "wages band" suggests that Congress did not intend that FICA taxes would be raised in a manner that would ignore the band.

Putting aside such inconsistencies, in the absence of a grant of express authority, do other provisions of the Code support the Government's case? The parties focus on the 1987 amendment and § 3121(q), from which they seek to derive the answer to

whether the IRS was given authority by Congress to assess against an employer such as Bubble Room a FICA tax liability unrelated to the employee's individually reportable or creditable wages. For the reasons, among others, stated by the panel majority, the answer cannot be found in § 3121(q). Given that, can the authority to make aggregate estimates be found to reside elsewhere in the interstices of the Code?

Faced with the absence of any express authorization for the result it chooses to reach, the panel majority cobbles together an argument based on the "Purpose of the Social Security System," and a singular provision found in an entirely different part of the Code. As far as the purpose of the Social Security system is concerned, the panel majority concludes that an employee who fails to report tips as required by law cannot complain that social security taxes assessed against the employer are not properly credited to the employee's earnings account. From this, the panel majority concludes that it is, therefore, the purpose of the Social Security system to support assessments against employers unrelated to the individual earnings of the employees.

That of course stands the policy of the law on its head. The policy issue is not whether employees have a claim for wage credits they do not report and for which they do not contribute FICA taxes – of course they do not. The issue is whether the Social Security system is intended to generate tax income to the Treasury unrelated to the actual (or properly estimated) tip income of an employee, and for which no employee receives wage credits. The answer to that is also no.

The bill that became OBRA 1987, and which contained the 1987 version of § 3121(q), was accompanied by a Report of the Senate Committee on Finance discussing the Senate's intentions regarding the several provisions in the bill. With regard to § 3121(q), after noting that under the then current law employees paid FICA tax on all tips received (up to the Social Security wage base), while employers only paid on a portion of those tips, the Senate Report concluded that "[i]t is believed that to *apportion the costs of Social Security benefits* more accu-

rately, employers should be subject to tax on all tips *which are credited for benefit purposes.*" S. Print. No. 63, at 203 (1987) (emphasis added); 133 Cong. Rec. S34,826 (1987). This language reflects the widely shared understanding that, unlike many other taxes levied, the FICA tax is not intended to raise money generally for the Treasury, but is keyed to the costs and benefits of the Social Security system.

It is clear that Congress has long viewed the taxes raised under FICA to be related directly to the costs and benefits of the Social Security system. *See Weinberger v. Wiesenfeld*, 420 U.S. 636, 647, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) ("But the fact remains that the statutory right to benefits is directly related to years worked and amount earned by a covered employee, and not to the need of the beneficiaries directly." (footnote omitted)); Nancy J. Altman, *The Reconciliation of Retirement Security and Tax Policies: A Response to Professor Graetz*, 136 U. Pa. L.Rev. 1419, 1428 (1988) ("Consistent with its origins, Social Security requires that all workers contribute some wage-related amount for their benefits and that the longer workers are employed and the higher their covered earnings, the greater their cash benefits." (footnotes omitted)). It should be further noted that both the 1965 and the 1977 amendments to the tip income provisions of the I.R.C. were included as part of amendments to the Social Security Act. To read the Social Security law as requiring an employer to pay into the Treasury funds that are unrelated to producing a corresponding benefit for employees, on whose earnings the tax is based, violates the symmetry that Congress set up between the FICA tax provisions and Social Security benefits.

Recognizing that none of the FICA statutes cited by the Government directly support its claim for authority to make the aggregate estimate involved here, and that the Government's policy arguments are at best shaky, the majority seeks support for its support of the Government in two statutory provisions from entirely unrelated sections of the Code. The first is I.R.C. § 6201, which recites a general power of the Commissioner to make the inquiries and determinations

necessary for collecting taxes. After stating the existence of this section, the majority opinion simply announces that this section "implicitly authorizes the IRS to use an indirect formula" in the manner here done. That is akin to saying that a statute that authorizes the Commissioner to adopt rules and regulations implicitly authorizes whatever regulations the Commissioner adopts, regardless of their scope or content.

The second cited Code section is I.R.C. § 446(b). The opinion calls this section "informative." It is difficult to know exactly how that section is informative with regard to the specific issue before us. That section of the Code on its face applies to taxpayers who fail to keep adequate records. In the case before us, the only taxpayers who failed to keep adequate records were the employees. It is certainly true that when a taxpayer fails to keep adequate books or otherwise fails to provide the Government with a valid basis upon which the taxpayer's income can be determined, the tax code specifically authorizes the IRS to use indirect methods to determine what, in the Commissioner's opinion, does clearly reflect the actual income. *See Meneguzzo v. Commissioner*, 43 T.C. 824, 831, 1965 WL 1240 (1965). That authority is the basis for the so-called McQuatters formula, under which the IRS can make a FICA tax assessment against an individual service employee based on an estimate of how much that employee received in unreported tips. *See McQuatters v. Commissioner*, 32 T.C.M. (CCH) 1122, 1973 WL 2419 (1973). But the taxpayer involved here is not the employee who has underreported, but the employer who, it is undisputed, has done everything the statute and the regulations require of it.

The question before us – whether the IRS has authority to assess FICA taxes against an employer in the manner it did here – recently came before one of our sister circuits. In *Morrison Restaurants, Inc. v. United States*, 118 F.3d 1526 (11th Cir.1997), the trial court on summary judgment had held, as did the trial court in the present case, that the IRS was without authority to assess FICA taxes on allegedly unreported tip income based on an aggregate total with-

out determining the underreporting of the individual restaurant employees. In addition, as in this case, the IRS had neither credited the individual employees' wage history accounts nor determined the amount of unreported tip income for each employee. *See Morrison*, 118 F.3d at 1528.

Our sister circuit vacated the judgment of the district court, and remanded for further proceedings. Our sister circuit adjudged that, because the provisions establishing employee and employer liability for FICA taxes are in different subparts of the Code, one entitled "Tax on Employees" and one "Tax on Employers," "[t]he separation of the provisions into different, parallel subchapters suggests that Congress contemplated that employees' and employer's shares could be imposed separately." *Id.* at 1529. From this the court concluded that "[w]hen the employee fails to report tips, neither the employee nor the employer can then complain that the employer's share of FICA taxes is not similarly credited." *Id.* at 1530. The court rejected Morrison Restaurant's policy argument that it should not be the duty of the employer to police the tip reporting of its employees. Though the court agreed that "it is the employee's responsibility to insure that he is properly credited for all his wages by accurately and completely reporting tips," the court expressed concern that "basing the employer's share of FICA taxes exclusively on employees' reported tips would provide incentive to the employer to discourage accurate reporting or ignore blatantly inaccurate reporting by the employees so that the employer could pay less FICA tax." *Id.*

With due respect, I do not agree with the Eleventh Circuit's reasoning in this case. In the first place, the fact that Congress organized the particular provisions addressing employee and employer liability for the specific FICA taxes into logically separate subparts of the same chapter does not carry convincing weight when placed against the overall symmetry and interconnectedness of the Social Security and FICA tax provisions.

With regard to the court's second point, the employer is not here complaining that there was a failure to credit the employee with wages allegedly earned, which failure I

agree is the employee's sole fault. Rather, the employer is arguing that in the absence of charging the employee with the supposed wages, and consequently crediting the employee with the earnings, the IRS should not, indeed cannot, tax the employer to pay for non-existent benefits attributable to those wages.

Finally, the concern that basing the employer's share of FICA taxes exclusively on employees' reported tips will lead to fraudulent behavior by employers, is unsupported, if not misplaced. In the first place, Bubble Room is not arguing that its FICA tax liability must be limited only to *reported* tips. Rather, it acknowledges, as it must, that its liability for FICA taxes is keyed to the amount of wages earned by its employees, including both *reported* and *unreported* tips (the latter being determined in accordance with established IRS procedures). In the second place, there is nothing to suggest that the rule argued for by Bubble Room will induce employers to support or encourage inaccurate reporting by employees in violation of law. The record of Bubble Room's efforts to obtain accurate reporting undercuts any such assumption.

Perhaps that concern reflects the Eleventh Circuit's sense regarding the conduct of the employer in its case. The court noted that the only effort the employer Morrison Restaurants made to see that its employees fulfilled their obligation to report cash tips was "routinely informing its restaurant employees that they are required to report all tips." *Id.* at 1527. In contrast, the record in this case indicates that Bubble Room has exerted substantial efforts to comply with the letter and spirit of the tax code.

Bubble Room informed all its tipped employees that the I.R.C. and its implementing regulations required that restaurant employees report tip income to the employer no later than ten days after the end of the preceding month, on special forms provided. Employees were informed that they were required to report all tip income received on their annual tax return. In 1989, Bubble Room distributed an "Employee Policy Manual" to its employees which outlined the employees' responsibilities for complying with IRS income reporting rules. The Employee Policy Manual informed employees that tips were taxable wages and that it was the employer's policy to require both its directly and indirectly tipped employees to comply with I.R.C. § 6053(a) by reporting one hundred percent of their tip income to the employer. Then in February 1989, Bubble Room management sent correspondence to its employees requesting that they acknowledge in writing their obligation to report all of their tip income to management and to the IRS. Subsequently, as part of management's computerized check-out process, Bubble Room implemented a procedure requiring tipped employees to report their tip income to the employer on a daily basis. The daily information provided by the employees was reviewed on a weekly basis by Bubble Room's managers to ensure compliance.

The only thing Bubble Room failed to do was to police individually the handling by its employees of any tips received, and to audit their personal records to ensure that cash tips were being fully reported. I agree with the Eleventh Circuit that the responsibility to accurately report tip income lies with the employee. Efforts by the employer to engage in policing of individual employee's personal financial affairs could only lead to unseemly conflicts between employees and employers, with attendant questions involving labor-management issues. If tax reporting is to be policed, it is the Government's job to do it, consistent with law. As the trial court here so well stated: "Even a substantially low reporting of cash tips, however, does not justify allowing the IRS to shift its responsibility to the employer for policing the acknowledged problem of underreporting of tips by employees.... If the IRS wishes to shift its duty to employers to ensure proper compliance, it should do so through a congressional enactment and continued cooperation between restaurants and the IRS." *Bubble Room, Inc. v. United States*, 36 Fed. Cl. 659, 678 (1996).

In sum, I agree with the Court of Federal Claims, and the district court in *Morrison*, that the employer's FICA tax liability is directly dependent on, and derivative of, its employees'. This is not a case in which a

taxpayer cavalierly disregarded its obligation to the Government, or in some other way evidenced a disregard for or lack of support for the Government's tax-raising efforts. On the contrary, the employer here did everything that could be asked of it, and more, falling short only in not volunteering to pay a tax that under the law it was not obligated to pay. If the Government establishes the amount of unreported income earned by individual Bubble Room employees, under the McQuatters formula or otherwise, and properly assesses that income against the employees (with the consequence that their social security earnings records will be credited accordingly), the statute requires the employer to pay its share of the FICA tax. But nothing in the law permits the Government to extract from the employer that which it has not determined is due from the employee, who, in the first instance, is the taxpayer and recipient of the income on which the employer's liability is based.

I do not slight the problem that the IRS has in obtaining accurate data on tip income of employees in the restaurant industry. *See Tip Income Study: A Study of Tipping Practices in the Food Industry for 1984*, I.R.S. Pub. No. 1530 (1990). The IRS has put in place new programs, in cooperation with the restaurant industry, to increase the accuracy of employee reporting of tip income. *See* Jody L. Spencer, Bubble Room, Inc. v. United States: *The Court of Federal Claims Says No To Aggregate Income Estimates for Employer–Only FICA Taxes*, 31 Ga. L.Rev. 1259, 1285 (1997).

Perhaps in the Treasury's view for fiscal reasons and in order to maintain the overall health of the Social Security system it is necessary for the Government to increase overall assets attributed to the Social Security system. Whether that should be done by imposing a generic additional liability on employers in the manner here done, or by a more broadly based tax is a matter of basic fiscal policy, to be decided by Congressional enactment. In the absence of such Congressional enactment, however, it is not for this court to grant such authority in contravention of existing law. The Court of Federal Claims correctly determined that the Government's assessment of additional FICA taxes from Bubble Room, in the manner undertaken here, was not authorized by law. The summary judgment in plaintiff's favor should be affirmed.

