Eiohaedson, Ch. J.,
delivered the opinion of the court:
The Secretary of the Interior in 1883 advertised for proposals for furnishing to the Government Hospital for the Insane in Washington a very large quantity of supplies, consisting of more than a hundred different articles, for all but eleven of which the claimant made bids, according to the advertisement, upon printed forms furnished by the Department.
The advertisement provided that “ Bids will be considered on each item separately.” Those of'the claimant upon sixteen items were accepted, and among them was the following, for which he was the only bidder:

Articles of agreement were entered into between the claimant and the Secretary of the' Interior, with schedules attached in the printed form used for the proposals, with all the hundred and more items thereon, and in which the price was carried out for each of the sixteen items of the accepted bids *330 of the claimant, including that for shucks as above, according to his proposals.
At the time the contract was made shucks were worth from $12 to $35 a ton, or from 6 mills to 1|: cents a pound, while the claimant was to receive nearly forty times as much as the highest value.
That an agreement to pay $1,200 a ton for shucks, actually worth not more than $35 a ton, is a grossly unconscionable bargain, defined in Bouvier’s Law Dictionary to be “ a contract which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept on the'other,” nobody can doubt. Such a contract, whether founded on fraud, accident, mistake, folly, or ignorance, is void at common law. It is not necessary to invoke the aid of a court of equity to reform it. Courts of law will always refuse to enforce such a bargain, as against the public policy of -honesty, fair dealing, and good morals.
Judge Story, in his work on Equity Jurisprudence (vol. 1, § 188), in enumerating certain classes of cases in which courts of equity will interfere to relieve against fraud, says: “ First. Fraud, which is dolus malus, may be actual, arising from facts and circumstances of imposition, which is the plainest case. Secondly. It may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses, and not under delusion, would make on the one hand, and no honest and fair man would accept on the other, which are inequitable and unconscientious bargains, and of stick even the common law has taken notice.”
In the early case of James v. Morgan (1 Living., 111), frequently cited, and always with approval, the plaintiff sued on a contract by which the defendant agreed to pay for a horse purchased a barleycorn a nail, and doubling at every nail in the horse’s shoes. There were thirty-two nails,-and doubling at every nail would make such a quantity of barley as to require the defendant to pay about $2,000 for the horse. The court directed the jury to disregard the contract, and to give the value of the horse, and they assessed the damages in pounds sterling, at less than $40.
So in Baxter v. Wales (12 Mass., 365), which was a suit at law upon notes given for the hire of two cows, wherein the defendant promised to return each cow in one year and pay $6 in *331 cash, and if not then returned to pay $6 a year until redelivered. One cow was returned in fifteen months and the other in five years. The court held that the agreement to pay at the rate of $6 per annum for the use of each one of the cattle, as stipulated in the notes, in case the defendant should fail to perform his contract at the end of the year, was unconscionable, and the jury was directed to assess damages at $6 on each note for one year and the actual value for the use of the cows thereafter.
This was in Massachusetts, about the year 1814, when it is understood the value of cows sold in the market was from $10 to $15,a head or thereabout.
Again, in the case of Leland v. Stone (10 Mass., 459), upon a warranty deed of several parcels of land. It appeared that one of the parcels had been previously conveyed to the grantor’s son, who had erected a dwelling-house thereon and was in exclusive possession, of which the grantor had knowledge. Under direction of the court the jury gave nominal damages only, on the ground that the parcel so previously conveyed was inserted in the deed by mistake. The court in its opinion cited the case of James v. Morgan and other cases, and said there is not in either of these cases any evidence of actual fraud or deception on the part of the plaintiff at the time of making the bargain. The fraud, if it is necessary to suppose any in this case, consisted' in afterwards taking advantage of the defendants’ ignorance or mistake, and of attempting to enforce the performance of a contract, such, as Lord Hardwicke expresses it, “as no man in his senses would make or as no honest man would come into.”
These citations are sufficient to show that in suits upon unconscionable agreements the courts of law will take the matter in their own control and will, without the intervention of courts of equity, protect the parties against their enforcement.
If it be so in suits on contracts between private parties who act by and for themselves, how much more is it so in suits on agreements by the United States, acting always through public officers, who are mere agents, required to act in good faith towards their principal according to the laws of the land, as everybody dealing with them are bound to know.
There is no finding by the court of actual fraud by any of the persons engaged in making the contract now under considera *332 tion. The unconscionable price inserted for shucks was no doubt a mere accident, perhaps from an idea that it was the price per hundred pounds instead of per pound, as printed in the proposals and contract, and from neglect to change the printed words accordingly, which, if it had been done, would have fixed the price at $12 a ton, the very price which the findings show to have been the lowest value of shucks of any kind at that time. But, however it may have happened, we hold, as was held in the case of Leland v. Stone, from which we have quoted the words of the court, that a contract may be held unconscionable without proof of actual fraud at its inception if its enforcement would be unconscionable.
It would be a fraud upon the United States to enforce such a contract as the one now in suit, and it never can be done through the Court of Claims.
The contract as to the price to be paid for tbe shucks is disregarded, and the claimant will have judgment for the actual value of all that were delivered, which is found to be $35 a ton, amounting to $117.60.
Davis, J., was absent when this case was heard and took no part in the decision.