**BROMLEY CONTRACTING COMPANY, INC.,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 85–1929.**

United States Court of Appeals, Federal Circuit.

June 20, 1986.

Martin J. Cohen, New York City, for appellant.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen and Thomas J. Rappaport, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee. Telo W. Braswell, Office of General Counsel, General Services Administration, of counsel.

Before SMITH, NIES, and BISSELL, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this Government contract case, the General Services Administration Board of Contract Appeals (board) found that, when the contracting officer accepted Bromley Contracting Company's (Bromley) bid, she had no actual or constructive knowledge of Bromley's unilateral mistake in bid. The board denied Bromley's action to reform the construction contract that arose as a result of Bromley's mistaken bid. We affirm.

### Issues

This court decides two issues on appeal: First, did Bromley's bid error and the Government's underestimate of the project's total cost constitute a mutual mistake for which reformation could be granted? Second, did substantial evidence support the board's finding that the contracting officer did not know, nor should a reasonable contracting officer have known, when the bid was accepted, that Bromley had made a mistake in its bid for the contract? Bromley raises other issues with which we deal summarily.

### Background [1]

In 1978, the General Services Administration (GSA) hired a consulting firm to estimate the cost of replacing the roof of a federal office building. The consulting firm's architect, Mr. John Knauth (Knauth), inspected the roof and called local roofing contractors, subcontractors, and material manufacturers for labor and material cost estimates in order to determine the total project price. Knauth prepared a detailed, item-by-item estimate of the cost of replacing the roof totaling $192,254.

---

1. We recite only those facts material to this decision. We appreciate the clarity with which the board made its factual findings.

The GSA formally advertised solicitations for bids in 1979 and in 1980 (the former solicitation was restricted to small businesses, while the latter was unrestricted). The GSA received no bids from either solicitation. In 1981, Knauth and Mr. Timmons modified the 1978 estimate to account for inflation and changes in the roof's specifications. The new cost estimate for replacing the roof was $225,820.

On June 12, 1981, GSA issued a third formally advertised bid solicitation. GSA received Bromley's bid of $248,223 as well as a bid by James J. Draper, Inc. (Draper), of $754,000. Bromley submitted its bid broken down into unit prices per square foot of roof for each section of the job (*e.g.*, old roof removal, new roof installation, etc.) without breaking down each unit price into its components, such as labor, materials, overhead, and the like. The contracting officer refused to consider Draper's bid because she considered it nonresponsive for failure to post an adequate bid guarantee [2] and because she thought it merely a grossly overpriced courtesy bid.[3] The GSA awarded the contract to Bromley.

The contract required completion of the roof by October 17, 1981. On October 20, 1981, Bromley by letter requested a time extension and gave notice that it had made a mistake in its bid. The contracting officer refused to rescind or reform the contract for lack of clear and convincing evidence of a mistake in bid. Bromley completely performed the contract rather than defaulting, and again requested contract reformation. A second contracting officer denied this remedy and the board affirmed.[4]

*Opinion*

A. *Mutual Mistake.*

Bromley attempts to present this case as one of mutual mistake in the formation of the contract for which the board may grant reformation. Bromley alleges that the Government's price estimate, as well as its own, is in error and that these errors constitute a mutual mistake. The board held that Bromley and the Government, however, did not enter into the contract based on commonly mistaken beliefs. We agree: this is not a case where two parties, both thinking a cow barren when in fact she was not barren, agreed to the sale of that cow. Here, the board found that Bromley left out the labor cost for installing the new roof from its bid, but properly included its other costs. The board found further that the GSA cost estimate, on the other hand, included roof installation labor costs but also included small underestimates of the cost of a large number of items. Knauth testified that these errors totaled from $25,000 to $95,000.[5] Substantial evidence supports the board's factual findings. Within our standard of review we must affirm those findings.[6] While Bromley's bid and Knauth's estimate were both mistaken as to the total cost of completing the job, we agree with the board and affirm that these separate errors do not constitute a mutual mistake that would allow contract reformation.

B. *Unilateral Mistake.*

Other than in a case of mutual mistake, a contractor may obtain a remedy

---

2. The bid solicitation required all bidders to provide a 20 percent bid guarantee; Draper gave only a 10 percent bid guarantee.

3. A courtesy bid is a bid based on a profit margin so great that no contractor would refuse to perform, rather than the contractor's usual considerations of his marginal cost of performance and the market clearing price. We do not imply that all bids as high as Draper's are courtesy bids. Whether a bid is a courtesy bid depends on the facts and circumstances of the case.

4. We have jurisdiction over this appeal under 41 U.S.C. § 607(g) and 28 U.S.C. § 1295(a)(10) (1982).

5. The board found these errors to be errors in judgment. We note that judgmental errors by a contractor in making a bid are not compensable after award. *Hamilton Enterprises, Inc. v. United States*, 711 F.2d 1038, 1046–48 (Fed.Cir.1983).

6. *See generally United States v. General Elec. Corp.*, 727 F.2d 1567, 1572–73 (Fed.Cir.1984) (applying the substantial evidence test in a Government contract case).

from the Government for a mistaken bid after the contract has been awarded only if the contracting officer knew or should have known of the contractor's unilateral mistake at the time the bid was accepted.[7] In that event the contractor may obtain reformation of a contract based on a bid containing any "clear cut clerical or arithmetical error, or misreading of the specifications."[8] Complete omission of a cost item from the bid calculation may be such a mistake,[9] but no contractor can recover for an error in judgment.[10] In sum, a contractor must prove two elements to recover for a unilateral bid mistake raised after contract award. The contractor must prove that the error is of the type that may be compensable, and that the contracting officer knew or should have known of the mistake at the time the bid was accepted.

▮▮▮ The board determines the degree of the contracting officer's knowledge, whether actual or imputed, based on all the evidence presented on that issue. The statutes limit our review of such findings of fact narrowly.[11] In the instant case, the board found that the contracting officer did not know of Bromley's mistake in omitting certain labor costs from its bid, nor should she have known of Bromley's error based on her knowledge of the attending circumstances. We may reverse the board's decision in this case only if we conclude that it was not supported by substantial evidence.[12] The board found that the disparity between Draper's and Bromley's bid did not constitute constructive notice to the contracting officer of Bromley's bid error because the contracting officer (1) considered Draper's bid nonresponsive,[13] (2) considered Draper's bid to be a courtesy bid, and (3) reasonably relied on the accuracy of Knauth's estimate, which was approximately 10 percent *lower* than Bromley's bid.[14] After a thorough review of the evidence establishing these facts, as well as all the evidence in the record on appeal, we conclude that the board's decision is supported by substantial evidence, and that we cannot reverse the board's decision.[15] Bromley alleges other errors in the board's decision but, after our review of the record, we conclude that those allegations are meritless.

## Conclusion

The board found that the contracting officer had no actual or constructive knowledge of Bromley's unilateral mistake in its bid. We hold, within our limited standard of review, that the board's decision is supported by substantial evidence. The

---

7. *Aydin Corp. v. United States*, 229 Ct.Cl. 309, 669 F.2d 681, 686 (1982); *Wender Presses, Inc. v. United States*, 170 Ct.Cl. 483, 343 F.2d 961, 962 (1965).

8. *Ruggiero v. United States*, 190 Ct.Cl. 327, 420 F.2d 709, 713 (1970).

9. *C.N. Monroe Mfg. Co. v. United States*, 143 F.Supp. 449 (E.D.Mich.1956); *see Aydin*, 669 F.2d at 685–86.

10. *Hamilton*, 711 F.2d at 1048; *Aydin*, 669 F.2d at 685; *Ruggiero*, 420 F.2d at 713.

11. 41 U.S.C. § 609(b) (1982) states:
"* * * the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence."

12. *See generally General Elec. Corp.*, 727 F.2d at 1572–73. Bromley urges us to reverse the board's decision as arbitrary and capricious based on comments made at the hearing by the author of the board's opinion, which comments seem in conflict with the board's decision. We note that three administrative law judges concurred in the decision below and conclude that Bromley's contention is meritless.

13. Whether Draper's bid was in fact nonresponsive is not relevant to our decision in this case.

14. *See Aydin*, 669 F.2d at 686; *Chernick v. United States*, 178 Ct.Cl. 498, 372 F.2d 492, 495–96 (1967). *See also Paragon Energy Corp. v. United States*, 230 Ct.Cl. 884, 887 (1982).

15. Our decision on the contracting officer's actual or imputed knowledge is dispositive of this case. Thus, we need not reach the board's extremely overbroad interpretation of *Hamilton*, in which the board required that the amount of the error be "essentially irrefutably determinable from the bidder's work papers used in calculating its bid price."

board's decision, denying Bromley's request for reformation of the contract in suit, is affirmed.

AFFIRMED.