**DAKOTA TRIBAL INDUSTRIES,**
Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. 94–1051 C.

United States Court of Federal Claims.

Dec. 5, 1995.

Lyle H. Moe, Grand Forks, North Dakota, for plaintiff.

Domenique Kirchner and Mary L. Smith, United States Department of Justice, Washington, D.C., for defendant.

## OPINION

HODGES, Judge.

Plaintiff seeks reformation of a contract with the General Services Administration to correct a unilateral mistake in its bid. After trial, we determined that the facts of this case could not support this type of equitable remedy. We must rule for defendant.

## FACTS

Plaintiff is a small business contractor pursuant to the section 8(a) set-aside program of the Small Business Administration. *See* 15 U.S.C. § 637(a). It submitted a bid in response to a 1992 General Services Administration solicitation to provide chain saw chaps. Plaintiff's offer listed the total cost per unit for each size of chaps. These prices were based on estimates plaintiff received from material suppliers.

One of the materials required by the solicitation was "woven Aramid cloth." Plaintiff requested an estimate from Southern Mills, Inc. on Aramid cloth meeting the solicitation specifications. The material was described by plaintiff as "WOVEN ARAMID CLOTH CONFORMING TO 6170–40, FINISH SCOURED OR UNSCOURED, COLOR NATURAL, 60″ WIDTH." [Emphasis in original]. Southern Mills' representative entered $7.58 per yard for this request. The response was sent to plaintiff by facsimile with a credit application. The facsimile cover sheet reads "Lead time for 1530 yds 60" Kevlar Nonwoven chain saw chap material (3.5 osy) would be 3 weeks from receipt of order. Price is $7.58 yard net. . . ." A statement of conformance included in the facsimile transmission notes, "Southern Mills' 3.5 osy Kevlar Chain Saw Chap material meets U.S. Forestry Service Specification 6170–4D, 02/81." Two other suppliers quoted plaintiff prices of $15 and $19.82 per yard for Aramid cloth. Plaintiff chose Southern Mills and made its bid based on this price.

During performance, the supplier's invoices showed that the cost of material was much greater than $7.58 per yard; the cost was actually $19.78 per yard. Southern Mills stated that it had misunderstood the solicitation requirement and had quoted a price for the wrong material—nonwoven Aramid cloth.

Plaintiff requested an equitable adjustment from the contracting officer in 1993 because of the mistake in its bid. The contracting officer denied the request and plaintiff filed suit in this court seeking reformation of the contract to compensate for the extra costs.

Plaintiff argues that the government should have been on notice that its bid was in error, and that it had a duty under those circumstances to verify the bid. Defendant states that plaintiff's bid mistake is not the type for which the government should be liable. Even if it were, defendant contends there could be no notice because the contracting officer reviewed the bid as required by the Federal Acquisition Regulations and determined that it was a fair and reasonable price.

## DISCUSSION

■ A government contract may be reformed or rescinded if the contracting officer accepts a bid with actual or constructive knowledge that the bid contains an error. *See BCM Corp. v. United States*, 2 Cl.Ct. 602 (1983). This equitable remedy is not available in every case. The mistake must be of the type that calls for such relief, and the contracting officer must have actual or constructive notice of the mistake at the time the bid was accepted. *Bromley Contracting Co., Inc. v. United States*, 794 F.2d 669, 671–72 (Fed.Cir.1986). *See also Liebherr Crane Corp. v. United States*, 810 F.2d 1153, 1157 (Fed.Cir.1987).

### I.

■ A "clear cut clerical or arithmetical error, or misreading of specifications" may entitle the bidder to relief. *Ruggiero v. United States*, 420 F.2d 709, 190 Ct.Cl. 327, 335 (1970). Errors in judgment are noncompensable. *Ruggiero*, 420 F.2d 709, 190 Ct.Cl. at 335; *Aydin Corp. v. United States*, 669

F.2d 681, 229 Ct.Cl. 309, 314 (1982); *BCM Corp.*, 2 Cl.Ct. at 610.

 When the bid submitted differs from the one intended, it cannot be characterized as a clerical or arithmetical error. We must decide whether this case presents a misreading of the specifications, or an error in judgment. An example of the former may be the omission of a cost item or a mistaken belief that the specifications do not call for certain work. *See Bromley Contracting*, 794 F.2d at 672. The latter occurs where the bidder has the facts necessary to make the proper conclusion but, because of improper assumptions or faulty assessments of those facts, makes a bad business decision. Such a "conscious gamble with known risks" is noncompensable. *Liebherr Crane*, 810 F.2d at 1157. *See Goldberger Foods, Inc. v. United States*, 23 Cl.Ct. 295, 311–12 (1991) (listing examples of error in judgment).

 A misreading of specifications may occur where an ambiguity exists. In this case, the specifications were clear; they called for *woven* Aramid cloth. Correspondence from Southern Mills stated that it was supplying nonwoven material. Plaintiff verified the quoted price but apparently did not question the type of Aramid cloth. At the time it bid, plaintiff did not appreciate the technical differences between woven and nonwoven cloth. Its limited knowledge is not an excuse, however. A bidder is liable for the mistakes of its suppliers. *Hankins Const. Co. v. United States*, 838 F.2d 1194 (Fed.Cir.1988).

If plaintiff had sought quotations only from Southern Mills, the mistake might have been more understandable, though not necessarily excusable. But plaintiff had the benefit of quotations from three companies for Aramid cloth. A comparison of the quotations should have raised questions about the material and the price quoted by Southern Mills. Its quote was half that of the next-lowest solicited quotation. The price disparity was obvious, if to plaintiff the reason for it may not have been.

Plaintiff's bid was the bid that it intended to submit. It should have been alerted to potential problems with the quote. Plaintiff made a conscious decision to use the lowest-priced cloth, perhaps believing that it was getting a bargain. In any event, plaintiff knew before the bidding period closed that this quote was much less than the others.

We must conclude from the facts and circumstances of plaintiff's bid preparation that its mistake was an error in judgment for which equitable relief is not available. It was a business decision for which a bidder must bear the risk, not the type of mistake for which a party to a contract is allowed an equitable remedy.

## II.

Even if the mistake were clerical or otherwise excusable, the equitable relief sought in this case is available only where the contracting officer has reason to know that the bid is mistaken. A contracting officer has a duty to examine all bids for mistakes and "[i]n cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer shall request from the bidder a verification of the bid, calling attention to the suspected mistake." 48 C.F.R. § 14.406–1. *See BCM Corp.*, 2 Cl.Ct. at 609 (citing *Ruggiero*, 420 F.2d 709, 190 Ct.Cl. 327).

 The contracting officer has a duty to verify a bid if all of the facts and circumstances suggest that it was reasonable to believe a mistake had been made. *Wender Presses, Inc. v. United States*, 343 F.2d 961, 170 Ct.Cl. 483, 485 (1965); *Ruggiero*, 420 F.2d 709, 190 Ct.Cl. 327. The duty to verify does not necessarily arise because of a price disparity among bids. *Aydin Corp.*, 669 F.2d 681, 229 Ct.Cl. at 317. Variance from government estimates, prior procurements, market value, or other bids should be considered. *See BCM Corp.*, 2 Cl.Ct. at 610 (citing Marshall J. Doke, Jr., *Mistakes in Government Contracts—Error Detection Duty of Contracting Officers*, 18 S.W.L.J. 1 (1964)). Other factors may negate an inference of contractor error, especially where they offer reasonable explanations for the disparity. *Aydin Corp.*, 669 F.2d 681, 229 Ct.Cl. at 317.

■ Plaintiff contends that its proposed price was too low compared to the government's estimates and prior procurements, and that this created a duty to verify the bid. In addition, plaintiff asserts that its bid proposal included a breakdown of cost elements that clearly indicated to the contracting officer the mistaken price for woven Aramid cloth. Defendant disputes that this information was requested or provided. Trial testimony on this issue was contradictory and inconclusive.

As this contract was offered pursuant to the section 8(a) small business set-aside program, both SBA and GSA reviewed the bids. Correspondence from the SBA directed plaintiff to "itemize all materials costs," and it was plaintiff's practice to provide cost-element information. Plaintiff's president and his administrative assistant recall sending the information by facsimile and later by mail to the government. Government witnesses denied receiving this information, and it was not included in the original bid proposal that the government entered into evidence.

We assume for the purpose of this opinion that the information was sent in some form to GSA and SBA, but this is not vital to our decision because the government determined that the bottom-line price for the chaps was reasonable. The bid did not put the contracting officer on notice to review the proposal in more detail.

A contracting officer need not consider such detailed information when it determines that bid prices are based on "adequate price competition." 48 C.F.R. § 15.804–3(a). This occurs where a "price analysis alone clearly demonstrates that the proposed price is reasonable in comparison with current or recent prices for the same or substantially the same items purchased in comparable quantities, terms, and conditions under contracts that resulted from adequate price competition." 48 C.F.R. § 15.804–3(b)(3).

The SBA contracting officer reviewed the bid proposal and noted that the price was above the government's estimate for the work. Because of this, she did not believe that cost breakdowns would be necessary to determine whether the bid was acceptable. GSA conducted a cost and pricing analysis of the bid. The review compared plaintiff's bid to recent contracts of another small business providing the same product. GSA had reviewed that contractor's cost and pricing data to determine whether its prices were fair and reasonable. GSA believed that a comparison to those contracts would be consistent with the FAR and would indicate whether plaintiff's bid was reasonable.

Plaintiff's bid was 8% to 13% higher than the previous bids on similar contract. GSA concluded that was reasonable. The pricing analysis stated that a "major portion of the cost (36.4%) of this item is wrapped up in two main material components, Kevlar and Cordura" and that the pricing of that material would be "based upon quantity purchase commitments" that the previous contractor received. GSA decided that the cost of this material to plaintiff would be "at a minimum 13.97% greater" than it was for the previous contractor because plaintiff would not qualify for a discount. In addition, the increased price of other materials and plaintiff's learning-curve costs satisfied GSA that plaintiff's product price was reasonable.

■ GSA had no reason to believe that plaintiff's bid contained a mistake. Its analysis compared the bid to recent bids for similar products that were deemed to be fair and reasonable. The bid was within a reasonable range of expectations based on previous contract prices. GSA was not obligated to search for a verification of plaintiff's bid in such circumstances. The contracting officer must seek to ensure that the bid is fair, but it is not required to act as "nursemaid" for bidders. *Aydin Corp.*, 229 Ct.Cl. at 317 (citation omitted).

### CONCLUSION

Plaintiff incurred unexpected costs on its contract because of a mistake in its bid. It must bear the risk of that mistake in this instance. A reasonable investigation would have alerted plaintiff to the problems with its bid. In any event, the government cannot be responsible for the mistake. It had no reason to know of the mistake when the contract was awarded. Defendant took steps to ensure that the contract price would be fair and

reasonable to the contractor and the government.

The Clerk will enter judgment for defendant. No costs.