436

**WILL H. HALL AND SON, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–1000C.**

United States Court of Federal Claims.

Nov. 14, 2002.

for summary judgment is GRANTED, and plaintiff's cross-motion for summary judgment is DENIED.

## BACKGROUND

In November 1995, the Employment and Training Administration of the Department of Labor (the "DOL") issued a solicitation of bids for Contract No. E–5715–6–00–82–20. The contract called for the construction of five buildings (the "base bid") at the Job Corps Center in Flint, Michigan, and in addition, three options (for the construction of two other buildings and an addition to a third), and thirteen alternate projects. Four contractors submitted bids to the DOL by the 2:00 p.m. deadline on January 11, 1996. Plaintiff Will H. Hall and Son, Inc. submitted the lowest bid of $17,230,000. The second lowest bid was $18,305,000. The acceptance period for plaintiff's bid expired in sixty days, unless the contracting officer requested an extension pursuant to Federal Acquisition Regulation (FAR), 48 C.F.R. § 14.404–1(d) (1995).

In preparing its bid, plaintiff solicited and received quotes from subcontractors for specification sections 07410–Manufactured Metal Wall Paneling, 07415–Manufactured Metal Roof Panels, and 07420–Composite Metal Panels. These sections required the fabrication of custom metal wall and roof panels both for the base bid buildings and the option buildings.

Stephen M. Seeger, Washington, DC, Attorney for Plaintiff.

Kyle E. Chadwick, Washington, DC, Scott Glabman, Washington, DC, Attorneys for Defendant.

## OPINION

WILSON, Judge.

This contract dispute is before the Court on cross-motions for summary judgment, pursuant to RCFC 56(c), on plaintiff's claim for reformation of a construction contract based on alleged mistake in bid. For the reasons discussed below, defendant's motion

On January 17, 1996 (six days after the DOL opened the bids), plaintiff notified the DOL that it had mistakenly failed to include any estimate in its bid for section 07420–Composite Metal Panels.[1] Plaintiff's bid allegedly relied on a quote from subcontractor C.L. Rieckhoff Co., Inc. ("Rieckhoff") for sections 07410, 07415, and 07420. However, the Rieckhoff quote included work under sections 07410 and 07415 only and expressly *excluded* the work required under section 07420. In its haste to meet the bid deadline, plaintiff alleges it mistakenly assumed that the Rieckhoff quote included all three sections, overlooking the express language to the contrary.

---

1. Up to this point, the DOL did not suspect a mistake in plaintiff's bid. Accordingly, the DOL did not request that plaintiff verify its bid. *See* 48 C.F.R. § 14.407–3(g) (1995).

Upon notification by plaintiff, the DOL contracting officer advised plaintiff to provide evidence of its alleged mistake, pursuant to 48 C.F.R. § 14.407–3(g). Plaintiff subsequently submitted computer-generated bid summaries dated January 17, 1996 (one week after the deadline for bids), together with copies of the Rieckhoff quote and three other subcontractor quotes. Plaintiff annotated by hand the relevant portions of these documents to demonstrate the nature of its mistake and the impact on the amount of its bid. The Rieckhoff quote indicated a price for sections 07410 and 07415 of $351,030 for the base bid, $1,220 for option one, and $10,850 for option two.[2]

Plaintiff initially advised the contracting officer that its mistaken use of Rieckhoff's quote, which excluded section 07420, had reduced plaintiff's total bid by $438,000, and plaintiff asked for an upward adjustment of its bid in that amount.[3] Pursuant to 48 C.F.R. § 14.407–3(g) and the contracting officer's request, plaintiff provided copies of its original, handwritten bid tabulation worksheets.[4] Plaintiff's original worksheets include items entitled "wall and roof panels" under the base bid and options one and two. Plaintiff allegedly intended this item to be a category inclusive of sections 07410, 07415, and 07420. The amount entered for the base bid "wall and roof panels" item was $351,030.

Unlike the majority of items on plaintiff's worksheets, no contractor is identified next to the quote. However, $351,030 is precisely the amount of the Rieckhoff quote upon which plaintiff allegedly relied. The "wall and roof panel" items for the option one and two worksheets are devoid of both contractor names and prices. Plaintiff's worksheet for option three does not list a "wall and roof panel" item at all. (Stipulated Material Facts at ¶¶ 19–20; App. to Def.'s Mot. for Summ. J. at 15, 30, 47.)

Although the contracting officer advised plaintiff telephonically to submit worksheets documenting its alleged mistake, he did not advise plaintiff in writing to submit a written request to correct or withdraw its bid as required by 48 C.F.R. 14.407–3(g)(2). The parties dispute whether the contracting officer ever told plaintiff that the option of withdrawal was available, but plaintiff never requested withdrawal, written or otherwise. The contracting officer maintains that he informed plaintiff that it could request withdrawal, and that plaintiff "emphatically rejected that option and declared that [plaintiff] would perform at its original bid price." (3d App. to Pl.'s Compl. at 2.) In their affidavits, plaintiff's secretary and treasurer, Troy W. Hall, and an assistant, Brenda R. Williams, deny ever being in-

---

2. Three other subcontractor quotes included specification section 07420:(1) Custom Architectural Sheetmetal Specialists, Inc. ("CASS") quoted a total of $657,000 for section 07420 only for the base bid and all three options; (2) CEI Roofing, Inc. ("CEI") quoted a total of $526,260 for section 07420 only for the base bid and all three options; and (3) Zack Company ("Zack") quoted a total of $796,000 for sections 07410, 07415, and 07420, for the base bid and all three options.

3. Plaintiff arrived at the figure of $438,000 by replacing the Rieckhoff quote for the base bid of $351,030 with the Zack quote of $660,000, for a rounded—off additional cost of $309,000. To this amount plaintiff added the Zack quote of $40,000 and $89,000 for options two and three, respectively. Plaintiff's bid for option three remained unchanged. Plaintiff allegedly used the Zack quote because it was the lowest quote that included all three sections. However, plaintiff later admitted that it did not receive the Zack quote until after it had submitted its bid to the DOL (Stipulated Material Facts at 3), and therefore could not rely upon it to prove its intended bid as required under the FAR.

In fact, the four written subcontractor quotes in the record (Zack, Rieckhoff, CASS, and CEI) were sent to plaintiff by facsimile and apparently bear time-stamps that indicate they were received *after* plaintiff submitted its bid. (Def.'s Mot. for Summ. J. at 6; App. to Def.'s Mot. for Summ. J. at 11, 73–77, 147.) Nevertheless, plaintiff maintains that it received the Rieckhoff, CASS, and CEI quotes by telephone prior to submission of its bid. (App. to Def.'s Mot. for Summ. J. at 147.) The facsimiles were apparently sent shortly thereafter as confirmation and before the bid opening. (Stipulated Material Facts at 2–3.)

4. These original worksheets were apparently used by plaintiff to compile subcontractor quotes for various sections of the work required by the contract. By contrast, plaintiff's computer-generated bid summaries, dated January 17, 2002, appear to have been created after plaintiff had submitted its bid and realized its mistake, in order to clearly demonstrate the mistake to the contracting officer.

formed that they could request withdrawal. (App. B to Pl.'s Statement of Genuine Issues at 1; App. C at 2) The government concedes that the contracting officer did not submit plaintiff's claim to the head of the agency or another higher authority for decision as required by 48 C.F.R. § 14.407–3(g)(2)–(3) and (c)(2). However, before the contract was awarded, the contracting officer advised plaintiff by telephone that it would not be permitted to correct its alleged bid mistake because it could not meet the requirements of the FAR. (Stipulated Material Facts at ¶ 27.)

On March 11, 1996 (the sixty-day bid acceptance deadline), the DOL awarded the contract to plaintiff at the original bid price of $17,230,000. Plaintiff began performance of the contract, but later made a written request to the contracting officer for reconsideration of its original request to correct the mistake in bid. By letter dated October 6, 1996, the contracting officer denied plaintiff's request, stating that "although there was evidence of a mistake in [plaintiff's] bid, there was no evidence of the intended bid as required by FAR [48 C.F.R.] 14.407–3(c)(1)." In a final decision dated March 24, 1997, the contracting officer reaffirmed his denial of plaintiff's claim, based on a lack of clear and convincing evidence of both the existence of a mistake and the intended bid.

Plaintiff's initial suit in this court alleged damages of $526,260 plus "markups for general conditions, bond and profit" in unspecified amounts.[5] However, the suit was voluntarily dismissed without prejudice because plaintiff did not properly certify its claim. Plaintiff subsequently submitted a certified claim to the contracting officer for $555,191.67 (the CEI quote of $526,260 plus 5.5% in markups for general conditions, bond, and profit), which was denied in a second final decision dated August 16, 1999. The contracting officer found that "the alleged mistake is not of the type that is legally correctable, and, alternatively, that there is no clear and convincing evidence of either the existence of the mistake or of the

bid actually intended." (3d App. to Pl.'s Compl. at 1.)

Following the contracting officer's final decision, plaintiff filed a four-count claim in this court for reformation of the contract—this time in the amount of $555,191.67. The complaint alleges that: (1) plaintiff was prejudiced by defendant's failure to comply with the requirements of the FAR, 48 C.F.R. § 14.407–3 upon disclosure of a mistake in bid; (2) defendant unreasonably refused to permit plaintiff to correct its bid even though plaintiff satisfied the requirements of the FAR; (3) defendant's acceptance of the bid and refusal to permit withdrawal resulted in an unenforceable contract; and (4) enforcement of the contract containing plaintiff's "gross" mistake in bid would be unconscionable.

The case arises under the Contract Dispute Act of 1978(CDA), 41 U.S.C. §§ 601–613 (1994) and the Tucker Act, 28 U.S.C. § 1491 (1994). Defendant moves for summary judgment on all four counts of plaintiff's complaint. Defendant argues that the contracting officer was not authorized to permit correction of plaintiff's bid (count II) because (1) plaintiff's mistake in bid was not the type that could be legally corrected; (2) plaintiff did not provide clear and convincing evidence of the existence of its mistake; and (3) plaintiff did not provide clear and convincing evidence of its intended bid. Defendant also argues that any violations of the FAR were harmless and not prejudicial (count I). Furthermore, because the contracting officer correctly refused to permit correction, and plaintiff did not request withdrawal, defendant argues, the contract is enforceable (count III). Finally, because the difference between plaintiff's alleged mistaken bid and its alleged intended bid was not great, defendant argues, the contract is not unconscionable (count IV).

Plaintiff cross-moves for summary judgment on count II only, arguing that defendant prejudiced plaintiff when it (1) unrea-

---

**5.** $526,260 is the total amount of the CEI quote for section 07420 for the base bid and all three options. If not for its mistake, plaintiff alleges, it would have utilized the Rieckhoff quote for sec-

tions 07510 and 07415, but added the CEI quote for section 07420. The CEI quote of $526,260 for section 07420 was lower than the CASS quote of $657,000.

sonably refused to allow it to correct its bid when it provided the contracting officer with clear and convincing evidence of both its mistake and the amount of its intended bid, and (2) failed to present withdrawal of the bid as an option. With respect to the remaining counts, plaintiff argues that genuine issues of material fact preclude summary judgment.

## ANALYSIS

Rule 56(c) of the Rules of the United States Court of Federal Claims (RCFC) provides that summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bubble Room, Inc. v. United States,* 159 F.3d 553, 561 (Fed.Cir. 1998). A material fact is one which will affect the outcome of the case. *Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over facts which are not outcome determinative will not preclude the entry of summary judgment. *Id.* The moving party need only establish that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To survive a motion of summary judgment, the nonmoving party must provide evidence sufficient to show the existence of a genuine issue of material fact. *R.J. Sanders, Inc. v. United States,* 24 Cl.Ct. 288, 291 (1991). The same burden requirements apply to a cross-motion for summary judgment. *Bubble Room, Inc.,* 159 F.3d at 561.

## I. Reformation for Prejudicial Refusal to Permit Correction of the Mistake

■ A government contract may be reformed or rescinded if the contracting officer accepts a bid with actual or constructive knowledge that the bid contains a compensable mistake. *Giesler v. United States,* 232 F.3d 864, 869 (Fed.Cir.2000); *United States v. Hamilton,* 711 F.2d 1038, 1046 (Fed.Cir. 1983); *see also Ruggiero v. United States,* 190 Ct.Cl. 327, 420 F.2d 709, 713 (1970). "Generally, a contractor may obtain reformation or rescission of the contract only if the contractor establishes that its bid error resulted from a 'clear cut clerical or arithmetical error, or a misreading of the specifications.'" *Giesler,* 232 F.3d at 869 (quoting *Liebherr Crane Corp. v. United States,* 810 F.2d 1153, 1157 (Fed.Cir.1987)).

■ According to the FAR, a bidder's request for an upward correction of its bid before award of the contract may be granted where the request is supported by clear and convincing evidence of both the existence of a mistake and the intended bid. 48 C.F.R. § 14.407–3(a). The intended bid does not need to be an exact figure, as long as the bidder provides clear and convincing evidence to establish that the bid would fall "within a narrow range of uncertainty" and would remain the low bid if corrected. *Bromley Contracting Co. v. United States,* 219 Ct.Cl. 517, 596 F.2d 448, 459 (1979); *Chris Berg, Inc. v. United States,* 192 Ct.Cl. 176, 426 F.2d 314, 316 (1970). If the evidence is clear and convincing as to the existence of a mistake, but not the amount of the intended bid, or if the evidence only reasonably supports the existence of a mistake but is not clear and convincing, an agency official above the contracting officer may permit withdrawal of the bid. 48 C.F.R. § 14.407–3(c).

### A. *Nature of the Mistake*

■ In order to obtain equitable relief, a contractor must demonstrate that the mistake is compensable, "*i.e.,* a clear cut clerical or arithmetical error, or misreading of the specification." *C.W. Over & Sons, Inc. v. United States,* 44 Fed.Cl. 18, 29 (1999) (quoting *Bromley Constr. Co. v. United States,* 794 F.2d 669, 672 (Fed.Cir.1986)); *Ruggiero,* 420 F.2d at 713. "If the contractor's error does not constitute one of these kinds of mistakes, then the contractor is not eligible for reformation of the contract." *Giesler,* 232 F.3d at 869; *see also Liebherr Crane Corp.,* 810 F.2d at 1157; *Hamilton Enterprises, Inc.,* 711 F.2d at 1046. Specifically, an error in business judgment is not a mistake for which equitable relief is available. *Liebherr Crane Corp.,* 810 F.2d at 1157; *Bromley Constr. Co.,* 794 F.2d at 672; *C.W. Over & Sons, Inc.,* 44 Fed. Cl. at 29; *Dakota*

*Tribal Indus. v. United States*, 34 Fed.Cl. 593, 596 (1995); *Ruggiero*, 420 F.2d at 713.

An error in judgment occurs "where the bidder has the facts necessary to make the proper conclusion but, because of improper assumptions or faulty assessments of those facts, makes a bad business decision." *Dakota Tribal Ind.*, 34 Fed.Cl. at 596. Thus, unlike a clerical or arithmetical error, or misreading of specifications, an error in business judgment is not a "mistake," but is considered to be a "conscious gamble with known risks," where the contractor assumes the risks of its deliberate choices. *Liebherr Crane Corp.*, 810 F.2d at 1157; *see also Hamilton Enterprises, Inc.*, 711 F.2d at 1048 (contractor was not entitled to reformation based on mistake in bid where mistake was a result of a "mistake in judgment"); *Aydin Corp. v. United States*, 229 Ct.Cl. 309, 669 F.2d 681, 685 (1982) (bidder's underestimation of the cost of materials was an "error of judgment" and not correctable).

The parties do not contend, nor does the record support, a finding that plaintiff made a "clerical or arithmetical error." [6] Nor can plaintiff's mistake be accurately characterized as a misreading of the contract specifications because plaintiff did not misread or misinterpret the requirements of the contract itself. *See Liebherr*, 810 F.2d at 1157 ("If a contractor fails to interpret correctly various elements of the specifications, he has 'misread' the specifications.") To the contrary, plaintiff was aware that the contract required the work described by specification section 07420, but failed to read or take note of the language in the Rieckhoff subcontract quote that expressly excluded that section.

■ Plaintiff's alleged mistake also cannot be clearly characterized as an error in business judgment. In *Giesler*, the Federal Circuit held that a bidder's failure to read the contract specifications was not an excusable "misread" of the type which permits reformation, but "rather amounted to gross negligence ... and a clear error in business judgment." 232 F.3d at 870–71. Although plaintiff in this case did not misread the contract specifications themselves, its handling of a subcontractor's quote was careless. However, plaintiff's mistake does not rise to the level of "gross negligence" found in *Giesler*. Unlike the *Giesler* bidder who repeatedly failed to read the contract specifications, even in the face of multiple government requests to verify its bid, plaintiff's carelessness—omitting monies for one section of work as a result of last-minute bid preparations—was much less culpable. Furthermore, unlike the *Giesler* bidder who became aware of its mistake only upon commencement of performance, plaintiff discovered its error six days after submitting its bid, and immediately notified the contracting officer. Therefore, plaintiff's carelessness, although negligent, does not amount to an error in business judgment.

Although plaintiff's alleged mistake is not readily categorized as clerical, arithmetic, a misreading of specifications, or a mistaken reliance of a subcontractor's firm quotation, it was not deliberate, but inadvertent, and is therefore the type of bid mistake for which correction is possible. The government mistakenly relies on *Roebbelen Eng'g, Inc.*, Comp. Gen. Dec. B–219929, 85–2 CPD ¶ 691, 1985 WL 53720 (1985), *aff'd on reconsid.*, 86–1 CPD ¶ 301, 1986 WL 63303 (1986), a case with similar facts, for the proposition that mistaken reliance on a subcontractor quote is an non-correctable error in business judgment. The Comptroller General reached the opposite conclusion, finding that "a bidder's reliance on a potential subcontractor's firm quotation that omits an item or contains an error the type of mistake for which relief may be granted" and was not a "judgment mistake." *Id.* However, even if the mistake was correctable, as the contracting officer originally concluded correctly, plaintiff has failed to provide clear and convincing evi-

---

6. "Clerical or arithmetical errors" include, but are not limited to: misplacement of a decimal point, *see Chernick v. United States*, 178 Ct.Cl. 498, 372 F.2d 492, 495 (1967); an error in pagination, *see PK Contractors, Inc.*, Comp. Gen. Dec. B–205482, 82–1 CPD ¶ 368, 1982 WL 27828 (1982); cost of items omitted from recap sheet, *see Allen L. Bender, Inc.*, LBCA No. 80–103, 81–2 BCA ¶ 15,435, 1981 WL 6901 (1981); and numbers divided rather than multiplied, *see Columbia Pac. Constr. Co.*, Comp. Gen. Dec. B–207313, 82–1 CPD ¶ 436, 1982 WL 26761 (1982); 48 C.F.R. § 14.407–2(a).

dence of the existence of its mistake or of its intended bid.

### B. *Clear and Convincing Evidence of Plaintiff's Mistake*

■ Section 14.407–3(a) of the FAR requires clear and convincing evidence of both the existence of the mistake and the intended bid in order for correction to be permitted. Clear and convincing evidence "produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed.Cir.1993) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984)). As the Supreme Court stated in *Colorado v. New Mexico*, clear and convincing evidence "instantly tilt[s] the evidentiary scales in the affirmative when weighed against the evidence ... offered in opposition." 467 U.S. at 316, 104 S.Ct. 2433; *Richey v. United States*, 50 Fed.Cl. 3, 8 n. 3 (2001).

Plaintiff's secretary and treasurer, Troy W. Hall, prepared and submitted plaintiff's bid, and assumed responsibility for the alleged mistake. Mr. Hall's affidavit provides a plausible account of the alleged mistake, and is uncontradicted by any other evidence in the record. However, the credibility of carefully worded affidavits, not subject to cross-examination, must be corroborated by other clear and convincing evidence. *See In re Sneed*, 710 F.2d 1544, 1549 (Fed.Cir.1983); *All–American Poly Corp. (Park Poly Bag Corp.)*, GSBCA 7104, 84–3 BCA ¶ 17682, 1984 WL 13723 (1984) ("Uncorroborated affidavit evidence, which ... is not subject to cross-examination, does not rise to the level of clear and convincing evidence.")

Plaintiff's worksheets provide limited corroboration of plaintiff's account of the alleged mistake. Plaintiff's original bid worksheets indicate (and the government accepts) that plaintiff relied on the Rieckhoff quote for the base bid "wall and roof panels" item because the number on the worksheet ("351.030") corresponds to the value of the Rieckhoff quote in plaintiff's bid ("$351,030"). However, the worksheets do not indicate whether plaintiff intended the "wall and roof panels" item to include only sections 07410–Manufactured Metal Wall Paneling and 07415–Manufactured Metal Roof Panels (as the item's name might suggest), or to encompass section 07420–Composite Metal Panels as well. Moreover, the worksheets do not indicate whether plaintiff was unaware that Rieckhoff's quote excluded work for section 07420. The disparity in price between Rieckhoff's quote and the other quotes which included section 07420 also does not automatically provide clear and convincing evidence of a mistake. As the contracting officer observed in his final decision:

> While a base bid of $351,030 for all three sections is low in comparison to Zack's base bid of $660,000 and Custom Architectural's [CASS's] base bid of $822,900 for the same sections, such a low bid is not inconceivable in the context of Hall's $17 million total bid.... The fact that Hall cut its mechanical (HVAC) and plumbing price by $568,000 from the worksheets to the computer-generated summaries shows that Hall made a business decision to reduce its bid by an even greater amount than the difference between its and Zack's [or CASS's] base bids. Furthermore, the fact that Hall did not question that Rieckhoff could do the work for all three sections for $351,030 shows that even Hall did not regard this price as being impossibly low on its face.

(3d App. to Pl.'s Compl. at 7.)

The primary support for plaintiff's claim that its use of the Rieckhoff quote was mistaken is provided by Mr. Hall's testimony. Although the Court finds Mr. Hall's account of the mistake supported by a preponderance of the evidence, it does not meet the clear and convincing standard. *See Price v. Symsek*, 988 F.2d at 1191 ("A requirement of proof by clear and convincing evidence imposes a heavier burden upon a litigant than that imposed by requiring proof by preponderant evidence ...."). Moreover, even if the parties' dispute over the existence of clear and convincing evidence of mistake were considered a triable issue of fact, the absence of clear and convincing evidence of plaintiff's intended bid, and the absence of prejudicial FAR violations, renders summary judgment in favor of defendant appropriate.

### C. *Clear and Convincing Evidence of Plaintiff's Intended Bid*

■ Even if plaintiff's mistake was of the type for which correction is permitted, and the record provided clear and convincing evidence of the existence of plaintiff's mistake, there is no clear and convincing evidence of plaintiff's intended bid, "within a relatively narrow range." *Bromley Contracting Co. v. United States,* 596 F.2d at 459 (quoting *Chris Berg, Inc.,* 426 F.2d at 316). Therefore, the contracting officer did not violate 48 C.F.R. § 14.407–3(a) by refusing correction of plaintiff's bid.

Plaintiff has provided inconsistent values for its intended bid throughout the course of this contract dispute. Plaintiff requested upward correction of its bid in the amount of $438,000 in its initial correspondence with the DOL in January 1996 (based on the Zack quote), $526,260 in its initial complaint to the this court (based on the CEI quote), $555,191.67 in its current complaint (adding 5.5% in markups to CEI's $526,260 for general conditions, bond, and profit), and $554,892 in its opposition to defendant's motion for summary judgment (adding 4% profit and 1.4% in cost of its bond). The range of these values is approximately 27 %. Furthermore, as the contracting officer pointed out in his final decision, had plaintiff become aware of its mistake before the bid opening, it would have had at least six options for its bid on the three sections (excluding the Zack quote from consideration).[7] The range of these options from the lowest, $737,305, to the highest, $1,008,030, is 38.6 %.

Plaintiff asserts that its intended bid would have selected the lowest quote for section 07420 (CEI, at $526,260), and retained the Rieckhoff quote for sections 07410 and 07415—presumably in the interest of remaining the low bidder. But as the contracting officer concluded, "[o]ne can only speculate about which package [plaintiff] wanted, whether it would have selected the lowest bidder, or whether it wanted the same subcontractor to do all the work." (3d App. to Pl.'s Compl. at 9.) Absent more evidence than plaintiff's mere assertion that it would have chosen the lowest bidder, the court is left with a range of 27 to 38.6 percent in possible intended bids. Such a range fails to establish by clear and convincing evidence plaintiff's intended bid within a narrow range of certainty. *See, e.g., Hampton Roads Mechanical Contractors, Inc.,* Comp. Gen. Dec. B–257908, 94–2 CPD ¶ 201, 1994 WL 671331 (1994) (finding a narrow range of uncertainty of $200 between the low and high range of the intended bid); *Vrooman Constructors, Inc.,* Comp. Gen. Dec. B–218610, 85–2 CPD ¶ 369, 1985 WL 53368 (1985) (finding a narrow range of uncertainty in a bid range within one percent of the contract price).

Plaintiff's reliance on *ACS Constr. Co. of Mississippi,* Comp. Gen. Dec. B–257775, 94–2 CPD ¶ 179, 1994 WL 643903 (1994), is misplaced. In that case, the Comptroller General upheld the agency determination that the bidder's intended bid fell within a narrow range of uncertainty. In *ACS,* plaintiff misread only one subcontractor quote and therefore there was only one possible intended bid. The only uncertainty in the intended bid was whether or not it should include the markups used by the bidder in other bids. In plaintiff's case however, there is no clear and convincing evidence as to which subcontractor quote plaintiff would have utilized if not for its mistake.

In summary, plaintiff has failed to establish a genuine issue of material fact in its claim for reformation based on the contracting officer's refusal to allow correction of its

---

7. The six options are as follows: (1) accepting CEI's bid of $376,275 for section 07420 and Rieckhoff's base bid of $351,030 for sections 07410 and 07415 for a total bid of $727,305 for the three sections; (2) accepting CASS's base bid of $474,000 for section 07420 and Rieckhoff's base bid of $351,030 for sections 07410 and 07415 for a total base bid of $825,030 for the three sections; (3) accepting CASS's base bid of $822,900 for the three sections; (4) accepting CEI's bid of $526,260 for section 07410 and 07415 for a total bid of $877,290 for the three sections in the base bid and all three options; (4) accepting CASS's bid of $657,000 for section 07420 in the base bid and three option and Rieckhoff's base bid of $351,030 for section 07410 and 07415 for a total bid of $1,008,030 for the three sections in the base bid and all three options; or (6) accepting CASS's bid of $1,005,900 for the three sections in the base bid and all three options.

alleged mistake. Even if the mistake was of the type that could be corrected, and there was clear and convincing evidence of the existence of plaintiff's mistake, there is insufficient evidence to support a finding of clear and convincing evidence of plaintiff's intended bid. Therefore, the contracting officer's refusal to permit correction was consistent with the FAR, 48 C.F.R. 14.407–3(a). Accordingly, defendant's motion for summary judgment on the count II is granted, and plaintiff's cross-motion is denied.

### D. Withdrawal and Other Violations of the FAR

■ In count I of its complaint, plaintiff alleges several prejudicial violations of the FAR, which, it claims, entitle it to the remedy of reformation of the contract. See Intercargo Ins. Co. v. United States, 83 F.3d 391, 396 (Fed.Cir.1996) ("prejudice" means injury to an interest that the statute, regulation or rule in question was designed to protect); Central Ark. Maint., Inc. v. United States, 68 F.3d 1338, 1342 (Fed.Cir.1995) (not all violations of statutes and regulations are the same; only a clear and prejudicial violation of a procurement statute or regulation warrants relief); United Int'l Investigative Serv., Inc. v. United States, 42 Fed.Cl. 73, 81 (1998).

Under 48 C.F.R. 14.407–3(c), a contractor may be permitted to withdraw (as opposed to correct) its bid if it establishes: (1) clear and convincing evidence of the mistake, but not of the intended bid; or (2) evidence reasonably supporting the existence of mistake, but not clear and convincing evidence. As the discussion above indicates, plaintiff provided the contracting officer "evidence reasonably supporting the existence of mistake," and withdrawal was permissible under 14.407–3(c)(2). The plaintiff argues that the contracting officer's alleged failure to advise plaintiff of its option to withdraw constituted a prejudicial

violation of the FAR.[8] In contrast, the contracting officer claims plaintiff emphatically rejected the option of requesting withdrawal. Regardless of the resolution of this factual dispute, plaintiff is not entitled to relief on this basis because a contractor is deemed to have constructive knowledge of applicable regulations. See Federal Crop Ins. v. Merrill, 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947). If plaintiff wished to withdraw its bid, it could have requested that option. The FAR places an affirmative obligation on the bidder to request withdrawal. See 48 C.F.R. § 14.407–3(a) and (b). Plaintiff does not dispute the government's argument that it did not affirmatively request withdrawal, and offers no evidence to suggest otherwise.

Plaintiff alleges six other examples of DOL noncompliance with the FAR regulations regarding mistaken bids: (1) the DOL failed to advise plaintiff to request in writing to modify or withdraw its bid in violation of 48 C.F.R. 14.407–3(g)(2); (2) it failed to request that plaintiff verify its bid as required by 48 C.F.R. 14.407–3(g); (3) it failed to specifically request additional information identified in 48 C.F.R. 14.407(g); (4) the DOL failed to submit plaintiff's request for an upward correction to a higher authority, and therefore the contracting officer rendered the agency's determination in violation of 48 C.F.R. 14.407–3; (5) it failed to render a determination on Hall's request for correction in a timely manner, or communicate such determination in writing in violation of 48 C.F.R. 14.407–1; and (6) it failed to keep adequate records pertaining the plaintiff's request in violation of 48 C.F.R. 14.407–3(h). (Pl.'s Compl. at 8; Pl.'s Opp. to Def.'s Mot. for Summ. J. at 22–23.)

These claims of noncompliance are either based on misinterpretations of 48 C.F.R. 14.407–3, not supported by any evidence in the record, or not sufficiently prejudicial to support a claim for reformation. First, the

---

8. At times, plaintiff asserts that the government refused to permit it to withdraw its bid. (Pl.'s Compl. at 10; Pl.'s Opp. to Def.'s Mot. for Summ. J. at 3.) The only evidence supporting this claim is an October 2, 1996 letter in which the contracting officer states that "[y]ou were notified ... by telephone ... that the determination had been made to award the contract based on

the original bid prices and not allow correction or withdrawal." (App. to Def.'s Mot. for Summ. J. at 138.). However, even if this is more than a case of imprecise wording by the contracting officer, the government was not required to allow withdrawal in the absence of an affirmative request by plaintiff, and plaintiff has provided no evidence of such a request.

requirement that the contracting officer "advise the bidder to make a written request to withdraw or modify the bid" appears to be intended for situations in which the bidder has not already made a written request. *See* 48 C.F.R. 14.407–3(g)(2). Because plaintiff made a written request to modify its bid six days after bid opening, the contracting officer did not violate the FAR by failing to advise plaintiff to make a duplicative written request. Similarly, the contracting officer was not required by 48 C.F.R. 14.407–3(g)(1) to "immediately request the bidder to verify the bid" when the bidder had already alleged a mistake. A request for verification is required where the contracting officer independently develops suspicion of a mistake in bid. The allegation that the contracting officer failed to specifically request pertinent evidence of the mistake required under 48 C.F.R. 14.407–3(g)(2) is not supported by any evidence, is contradicted by the contracting officer's specific request for the original bid worksheets, and is not prejudicial because the plaintiff was not prevented from providing all the evidence in its possession. Similarly, plaintiff's allegation that DOL failed to render a determination on plaintiff's request for correction in a timely manner or communicate such determination in writing, and failed to keep adequate records to plaintiff's detriment are also unsupported by any evidence. Finally, although the government concedes that the contracting officer failed to submit plaintiff's alleged mistake to higher authority in violation of 48 C.F.R. §§ 14.407–3(c)(2) and (g)(3), the violation was not sufficiently prejudicial to justify reformation of the contract. Plaintiff has had the opportunity for judicial review of the contracting officer's determinations, and the Court finds that the contracting officer correctly applied the FAR. For all these reasons, the government's motion for summary judgment on count I of plaintiff's complaint is granted.

## II. Count III: Reformation for Unenforceability

Count III of the complaint alleges that the contracting officer's acceptance of plaintiff's mistaken bid after unreasonably refusing to allow correction and committing other prejudicial violations of the FAR resulted in an unenforceable contract. Plaintiff argues it is entitled to recover the fair and reasonable value of the labor, material, and services provided to the DOL because it was compelled to perform an unenforceable contract. However, the Court's holding that the contracting officer properly refused to allow correction of plaintiff's bid and that defendant's violations of the FAR were not sufficiently prejudicial to support contract reformation defeats plaintiff's unenforceability argument. Therefore, the government's motion for summary judgement on count III of plaintiff's complaint is granted.

## III. Count IV: Reformation for Unconscionability

 Count IV of the complaint alleges that plaintiff's mistake in bid was so gross that enforcement of the contract without allowing for reformation would be unconscionable. The government overreaches if it does not permit correction or withdrawal of a bid mistake in the face of clear and convincing evidence of the mistake and the intended bid. Conceivably, if bidder's mistake is large enough, government acceptance could lead to an unconscionable contract. *See Hume v. United States*, 21 Ct.Cl. 328, 330, 1800 WL 1535 (1886) (describing an unconscionable contract as one that "no man in his sense, not under a delusion, would make, on the one hand, and which no fair and honest man would accept on the other"), *aff'd*, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889). However, "rescission of a contract for unconscionability is an extraordinary remedy usually reserved for the protection of the unsophisticated and the uneducated." *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1365 (Fed.Cir.1999) (quoting *Wilson v. World Omni Leasing, Inc.* 540 So.2d 713, 717 (Ala. 1989)).

Even if the government had unfairly refused to allow correction of plaintiff's mistake and culpably failed to present bid withdrawal as an option, the resulting contract was not unconscionable. At the time the contract was awarded, plaintiff alleged that its mistake had affected its total bid of $17.2 million by $438,000, or about 2.5 percent. Such a small percentage reduction does not render

the contract unconscionable. *See Rockwell Int'l Corp.*, 97–1 BCA ¶ 28726, 1996 WL 747980 (alleged bid error reducing total bid by 4.2 percent did not render contact unconscionable). Furthermore, without correction of its bid mistake, plaintiff, at the time of award, still anticipated a profit of approximately 1.6%. On a contract valued over $17.2 million, plaintiff's profit would amount to about $275,000. Plaintiff may be right that "[r]easonable businesspeople do not assume such enormous risks for such meager returns." However, the alleged unreasonableness of plaintiff's contract, in light of its persistent profitability, does not rise to the level of unconscionability, and reformation is not justified on that ground. Therefore, defendant's motion for summary judgment on count IV is granted.

## CONCLUSION

Correction of a bid may be granted only where the request is supported by clear and convincing evidence of both the mistake and the intended bid. Although plaintiff appears to have made a mistake, it has not provided clear and convincing evidence of its mistake and intended bid. For the reasons discussed above, defendant's motion for summary judgment on all counts is GRANTED, and plaintiff's cross-motion for summary judgment on count II of the complaint is DENIED.

The Clerk of Court is directed to enter judgment for defendant. Each party shall bear its own costs.

**IT IS SO ORDERED.**